UNITED STATES of America, Plaintiff–Appellee,

v.

Roy L. BOWEN, Defendant–Appellant.

No. 90–1227.

United States Court of Appeals, Tenth Circuit.

Oct. 8, 1991.

Michael P. Carey, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for defendant-appellant.

Before SEYMOUR, EBEL and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Buena Vista Bank and Trust Company (hereinafter referred to as the Bank) was a state chartered federally insured financial institution located in Buena Vista, Colorado. It was declared insolvent on August 28, 1986, at which time the Federal Deposit Insurance Corporation (FDIC) was appointed receiver and took custody of the records and assets of the institution.

In March, 1979, Roy L. Bowen, and others, purchased the Bank. Bowen was president, chief executive officer, and chairman of the board of directors, as well as a part owner of the Bank, from 1979 until the Bank was closed in 1986.

In a multi-count indictment Bowen was charged in twelve separate counts with misapplication of monies belonging to the Bank with an intent to injure or defraud the Bank, in violation of 18 U.S.C. § 656 (1989). In two separate counts, Bowen was charged with making false statements to the FDIC, in violation of 18 U.S.C. § 1001 (1989). And in two other counts, Bowen was charged with making false statements to two lending banks which were federally insured, in violation of 18 U.S.C. § 1014 (1989).

A jury convicted Bowen on six of the twelve counts charging him with misapplication of monies belonging to the Bank and acquitted him on the remaining six counts charging misapplication. The jury convicted Bowen on one of the two counts charging him with making false statements to the FDIC, and acquitted him on the second count so charging. He was also convicted on both counts charging him with making false statements to federally insured banks which made loans to him.

As stated, the jury convicted Bowen on six of the twelve counts charging misapplication of monies belonging to the Bank. On four of those six counts Bowen was sentenced to imprisonment for five years. The jury also convicted Bowen on one of the two counts charging him with making false statements to the FDIC. Bowen was sentenced to five years imprisonment on that count. All of the five-year terms were to be served concurrently.

The jury convicted Bowen on two counts charging him with making false statements to federally insured banks which made loans to him. On each of these counts Bowen was sentenced to two years imprisonment, to be served concurrently with each other, but consecutively to the five-year terms imposed on other counts. On the remaining two counts charging misapplication of the Bank's monies, Bowen was sentenced to five years probation to commence upon his release from confinement. Bowen appeals all convictions.

### I. Superseding Indictments

On December 13, 1989, a sixteen-count indictment was returned against Bowen by a Grand Jury. On April 5, 1990, a First Superseding Indictment was returned by the Grand Jury charging Bowen in sixteen counts with the same crimes charged in the original indictment.

On the day the First Superseding Indictment came on for trial, a Second Superseding Indictment was returned against Bowen. This indictment also contained the same sixteen counts, but there were some

changes in dates and amounts of money involved in certain of the counts. Defense counsel objected to the Second Superseding Indictment on the grounds, *inter alia*, of untimeliness and was adamant that the matter go to trial on the First Superseding Indictment. The district court, over strenuous objection from the government, agreed with defense counsel and the case went to trial on the First Superseding Indictment, which, as indicated, is what defense counsel sought, and obtained.

On appeal, different counsel now argues that the Second Superseding Indictment nullified the First Superseding Indictment, and that the district court should have dismissed the First Superseding Indictment and released the defendant. We disagree.

█ When the Second Superseding Indictment was returned, Bowen had not been placed in jeopardy on the First Superseding Indictment. Indeed, when the Second Superseding Indictment was returned, Bowen had not yet been arraigned on the First Superseding Indictment. And counsel agrees that under these circumstances there is no double jeopardy problem in the present case.

█ A "superseding indictment" means a second indictment issued in the absence of a dismissal of a prior indictment. *United States v. Rojas–Contreras,* 474 U.S. 231, 237, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (Blackman, J., concurring). A superseding indictment may be returned at any time before a trial on the merits of an earlier indictment. *United States v. Herbst,* 565 F.2d 638, 643 (10th Cir.1977).*

In *United States v. Cerilli,* 558 F.2d 697, 700 n. 3 (3d Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977), appears the following:

> Alternatively, the defendants appear to contend that the issuance of the "superseding" indictment necessarily constitutes a dismissal of the original indictment. Continuing this line of reasoning, they claim that, because jeopardy attached under the first indictment, and as the first indictment has, in effect, been dismissed, no prosecution is possible under the second indictment or, presumably, under any other one.

The defendants' argument in this regard is not convincing, especially in the absence of any authority for such a theory. *As we understand it, there are two pending indictments against the defendants, and the government may select one of them with which to proceed to trial.* See cases cited in note 8 and accompanying text *infra.* (emphasis added).

In accord with *Cerilli, see United States v. Stricklin,* 591 F.2d 1112, 1115–16, n. 1 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979), which reads, in part, as follows:

> A superseding indictment may be returned at any time before a trial on the merits. Indeed, two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment. Since the original indictment apparently was never dismissed, there are technically two pending indictments against Stricklin, and it appears that the government may select one of them with which to proceed to trial. (citations omitted).

We have found no authority which supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air. In the instant case, we are concerned with at least two outstanding indictments against Bowen. As indicated, counsel agree that we are not concerned with a double jeopardy problem. The district court did not err in holding that because of untimeliness Bowen would not be forced to trial on the Second Superseding Indictment which was only returned on the morning the First Superseding Indictment was set for trial, and that the trial on the First Superseding Indict-

---

\* Ordinarily where there is a superseding indictment, trial is on the superseding indictment. The instant case presents the reverse: Because of untimeliness of the return of the second superseding indictment and because of defendant's objection thereto, trial, at the insistance of the defendant, was on the First Superseding Indictment.

ment, which was set for that date, would proceed as scheduled. Indeed, that is what defense counsel insisted on in the district court.

## II. Severance

■ In a pretrial motion, Bowen asked that the two counts charging him with making false statements to the FDIC and the additional two counts charging him with making false statements to federally insured financial institutions making personal loans to him be severed from the trial of the other twelve counts charging him with misapplying monies belonging to the Bank with an intent to defraud the latter. His argument was that in the counts charging him with misapplication of bank funds, he was charged in his official capacity as a bank officer, and in the four counts which he sought to have severed, he was not so charged, i.e., he was there only acting in a private capacity. After hearing, the district court denied the motion to sever. In so doing, we find no abuse of discretion. *United States v. Valentine*, 706 F.2d 282, 289–90 (10th Cir.1983).

Fed.R.Crim.P. 8(a) permits two or more offenses to be joined in the same indictment if they are of the same or similar character or are based on two or more acts or transactions constituting a part of a common scheme or plan. In our view, the counts which Bowen sought to sever are similar to the other counts charging misapplication and are a part of an overall scheme or plan. The two cannot be viewed in splendid isolation. In *United States v. Hayes*, 861 F.2d 1225, 1231 (10th Cir.1988), we stated that the denial of a motion to sever counts will not be reversed on appeal in the absence of a strong showing of prejudice, and that the defendant's burden to show an abuse of discretion on the part of a district court is a "difficult one." Bowen has not met the test laid down in *Hayes*.

## III. Evidence of Loss and Closing

■ Counsel agree that proof of actual monetary loss to the Bank is not necessary to sustain a conviction for willful misapplication of bank funds, citing *United*

*States v. Gallagher*, 576 F.2d 1028 (3d Cir.), *cert. dismissed*, 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675 (1978). In other words, it is sufficient to show a willful misapplication of bank funds with an *intent* to injure or defraud the Bank, and proof of actual loss is not essential. From this proposition, defense counsel argues that the district court erred in allowing into evidence certain testimony tending to show actual monetary loss to the Bank resulting from certain of Bowen's acts and some passing references by several witnesses to the fact that the Bank was eventually closed and taken over by FDIC.

We do not regard this particular matter as being of any great moment. It certainly played no major role in this somewhat protracted trial. Although proof of loss may not be an essential element of a crime charging a violation of 18 U.S.C. § 656, evidence of such arguably has bearing on the issue of whether Bowen had an intent to injure or defraud the Bank. And the fact that the Bank was taken over by FDIC is an inescapable fact of the entire case.

## IV. Carl Wilson

■ Count 9 of the First Superseding Indictment charged Bowen with the misapplication of $100,000 of the Bank's money involving an unsecured loan to one Carl Wilson. Count 10 charged the misapplication in the form of a $20,000 advance of the Bank's money to Carl Wilson for the benefit of Mount Princeton Hot Springs Resort. Carl Wilson appeared at trial and testified as a government witness.

Prior to trial, the prosecution notified defense counsel that Carl Wilson and a company which he controlled were under investigation by the FBI, but that the investigative file contained no statements attributable to Wilson. At trial, defense counsel asked that he be given the government's file on Carl Wilson so that he could determine whether it contained any *Brady* material. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Apparently, with the acquiescence of all concerned, the district court examined Wilson's file, in camera, and reported back

that it contained no material which could conceivably be of help to Bowen, be it through the cross-examination of Wilson, or otherwise.

On appeal, we too have read Wilson's file and we agree with the district court's reading thereof. We find no prejudice to Bowen in the way this matter was handled.

### V. Insufficient Evidence

As her final ground for reversal, defense counsel argues that the evidence is insufficient to support Bowen's conviction on any of the nine counts of which he was convicted. Bowen did testify in his own behalf and testified, in effect, that he had no intent to injure or defraud the Bank and that in all his various actions he was simply trying to bolster a sagging local economy. Such, in our view, at best only posed issues of fact which have now been resolved by the jury.

Judgment affirmed.