John Teakell, Asst. U.S. Atty., Fort Worth, TX, for U.S.

Neil Durrance, Arlington, TX, for defendants.

**UNITED STATES of America**

v.

**Walter Humbert CUSHMAN III, et al.**

**No. 4:93–CR–015–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Sept. 13, 1993.

### MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

By order signed July 23, 1993, United States of America and defendant GRANT TYLER OTTESEN ("Ottesen") each was directed to file a legal memorandum discussing all authorities the party could find on the subject of whether a transfer under Fed. R.Crim.P. 20 would be permissible and appropriate as to Ottesen under the circumstances of this case. The court has received and reviewed the memoranda filed by the parties, and has conducted further research on the subject under consideration. For reasons stated in the July 23 order and on the

record at the hearing held July 9, 1993, the court has continued to have misgivings as to whether a Rule 20 transfer would be appropriate as to Ottesen. The court has now concluded that such a transfer would be contrary to the letter, spirit, and intent of Rule 20.

## I.

### *Factual Background as to Ottesen*

Ottesen is one of twelve defendants who are named in the original indictment returned in this action. That indictment, which was filed February 10, 1993, charges Ottesen: in Count 1, with conspiracy to commit mail fraud, wire fraud, money laundering, and criminal contempt; in Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, with mail fraud offenses; and, in Counts 18 and 19, with wire fraud offenses. After alleging in paragraph 49 of the overt acts section of the indictment that two of Ottesen's co-defendants planned to take steps to prevent certain persons from disclosing information concerning activities of a co-defendant and disclosing the true facts concerning certain investments, the indictment alleges in paragraphs 50 and 51 in reference to Ottesen that:

50. In furtherance of the conduct alleged in paragraph 49, on or about April 1991, OTTESEN contacted an individual and offered him money to break the legs of, or to kill, former sales brokers. OTTESEN told this individual that CUSHMAN would prefer to have the sales brokers killed and that he, OTTESEN, could provide a gun.

51. On or about April 1991, in Bedford, Texas, CUSHMAN told the same individual whom OTTESEN had offered money to break the legs of, or to kill, former sales brokers, that the offer OTTESEN made was valid and that he, CUSHMAN, needed an answer to the offer soon.

Ottesen voluntarily surrendered in Kansas City, Missouri, and made his initial appearance before a United States Magistrate Judge in the Western District of Missouri, Western Division, on February 18, 1993, at which time conditions of release were established and Ottesen was directed to appear before a United States Magistrate Judge of this court. On February 24, 1993, he made such an appearance, when counsel was appointed to represent him and an arraignment date was fixed. Ottesen's arraignment was before the undersigned judge on February 26, 1993. He pleaded not guilty to all counts in which he was charged. By order signed February 26, the case was set for jury trial at 9:00 a.m. on April 5, 1993. For the reasons stated in the record of the February 26 hearing, Ottesen was taken into custody at the conclusion of the hearing. On April 9, 1993, Ottesen filed a "Motion and Brief for Reconsideration of Detention Hearing, Reinstatement of Bond and for Release from Detention", which motion was granted by order signed April 12, 1993.

Ottesen and other defendants filed motions for continuance. Those motions were granted by order signed by this court on March 9, 1993, and the case was rescheduled for trial on June 21, 1993. Thereafter Ottesen filed several motions, on which the court ruled.

A superseding indictment was returned and filed March 30, 1993, in which Ottesen is charged: in Count 1, with conspiracy to commit mail fraud, wire fraud, and money laundering; in Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15, with mail fraud offenses; and, in Counts 16 and 17, with wire fraud offenses. The allegations made against Ottesen in paragraphs 50 and 51, set forth above, were repeated in the superseding indictment. On April 9, 1993, Ottesen appeared before the court for arraignment on the superseding indictment, at which time he pleaded not guilty to all counts in which he was charged.

The court has now learned that on May 19, 1993, Ottesen and United States of America entered into a plea agreement by which, *inter alia*, (1) Ottesen agreed to plead guilty to a one-count information charging a violation of 18 U.S.C. § 1343, wire fraud, (2) United States of America agreed to "move the court at trial of the other defendants or at OTTESEN'S sentencing, to dismiss OTTESEN from the pending indictment", and (3) United States of America "agrees to transfer this case to the District of Kansas for disposition, the district in which OTTES-

EN resides, pursuant to Rule 20 of The Federal Rules of Civil Procedure." Plea Agreement, Gov't Ex. "1" to 7/9/93 hearing. The plea agreement was prepared for filing in this court and in the above-styled and numbered action.

Pretrial conferences were held on May 25, 1993, and again on May 26, 1993. Ottesen was present with his attorney on each of these occasions. Nothing was said on either date about Ottesen's plea agreement or the possibility that he could waive indictment and enter a plea of guilty to the information while he was already in Fort Worth before this court. In an instrument Ottesen filed June 4, 1993, entitled "Response to Government's Motion for Continuance", Ottesen explained the difficulties that he anticipated would be encountered in trial preparation, and he reurged motions for continuance he previously had filed. Ottesen said nothing about the plea agreement he and United States of America had made two weeks earlier.

On June 15, 1993, a second superseding indictment was filed. Ottesen is charged: in Count 1, with conspiracy to commit mail fraud and wire fraud; in Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15, with mail fraud offenses; and, in Counts 16 and 17, with wire fraud offenses. The allegations made against Ottesen in paragraphs 50 and 51 of the original and first superseding indictments, as set forth on page 2 above, were deleted from the second superseding indictment.[1]

On June 18, 1993, three items were filed in reference to Ottesen, an information, a Consent to Transfer of Case for Plea and Sentence (under Rule 20), and a Motion to Dismiss. The information charges Ottesen with a single act of wire fraud, pertaining to a transaction that is not mentioned in the original, superseding, or second superseding indictment. It states that it "[s]upersedes indictment filed June 15, 1993." The consent to transfer form reads as follows:

I, Grant Tyler Ottesen, defendant, have been informed that a superseding (indictment, information, complaint) is pending against me in the above designated cause. I wish to plead guilty (guilty, nolo contendre) to the offense charged, to consent to the disposition of the case in the ____ District of Kansas in which I reside (am under arrest, am held) and to waive trial in the above captioned District.

Ottesen said nothing in the form about pleading guilty to any count of the original, superseding, or second superseding indictment. The form was signed by an Assistant United States Attorney for this district and one for the District of Kansas. The motion to dismiss requested this court to dismiss the indictment filed June 15, 1993, as to Grant Tyler Ottesen, giving as its reason that "the Indictment filed June 15, 1993 has been superseded by an Information filed June 18, 1993." It did not seek dismissal of the original or first superseding indictment.[2]

Another continuance in the trial setting was granted by order signed June 18, 1993, which fixed a new trial date of August 16, 1993. Ottesen appeared before the court with his attorney on June 22, 1993, for arraignment on the second superseding indictment. Again, nothing was said about the possibility that Ottesen could accomplish his plea of guilty to the information while already in Fort Worth before this court.

On July 9, 1993, the court had a hearing on Ottesen's motion to dismiss, at which Ottesen was in attendance with his attorney. Shortly before this hearing the court learned of the plea agreement Ottesen and United States of America had signed on May 19. At the hearing the court learned of an unsigned factual resume to which United States of America and Ottesen had agreed. During the course of the hearing the factual resume was signed.[3] As was true with the plea agreement, the factual resume was prepared

---

1. The deletion of these allegations as to Ottesen is somewhat puzzling in view of the statement by Assistant United States Attorney John Teakell that the allegations "are basically true." Transcript 7/9/93 hearing at 15.

2. The original, first superseding and second superseding indictments all continue to be in effect. See *United States v. Bowen*, 946 F.2d 734, 736 (10th Cir.1991).

3. The signed factual resume is Gov't. Ex. "2" to the 7/9/93 hearing.

for filing in this court and in the above-styled and numbered action. At the July 9 hearing, the court raised questions, and expressed concerns, about the procedures sought to be invoked by United States of America and Ottesen, and questioned whether a Rule 20 transfer should, or can, be made under the circumstances existing in this case as to Ottesen. Though Ottesen was present in Fort Worth, the plea agreement had been made and was fully signed, and the factual resume was agreed upon and signed, no proposal was made to the court at the July 9 hearing that Ottesen accomplish his plea of guilty to the information while he already was in Fort Worth before this court.

On July 15, 1993, United States of America filed a motion to withdraw her motion to dismiss the second superseding indictment, which had reference to the motion to dismiss she had filed on June 18. By order signed July 23, 1993, the trial of this action was continued to November 15, 1993.

By order signed July 23, 1993, the court set forth in some detail the court's concerns relative to the procedure United States of America and Ottesen are seeking to pursue in this action, particularly their attempt to cause a Rule 20 transfer to be made. The July 23 order directed United States of America and Ottesen each to file a legal memorandum of the kind mentioned in the opening sentence of this memorandum opinion and order and invited United States of America to provide, as attachments to her memorandum, copies of all memos, rules, regulations, etc., on the subject of the expectations of the Department of Justice or the United States Attorney pertaining to Rule 20 in relation to a case in which a plea agreement has been made or is contemplated. In response thereto, each party filed a legal memorandum. United States of America's was accompanied by sections of the United States Attorneys' Manual pertaining to Rule 20.

## II.

### Question to be Decided

The ultimate question to be decided by the court is whether a Rule 20 transfer is appropriate as to Ottesen in this case, bearing in mind that (1) he has pleaded not guilty to each count of the original, superseding, and second superseding indictments in which he is charged, (2) he has not indicated a willingness to plead guilty to any count of any of the indictments, (3) instead, he has indicated that he does not plan to plead guilty to any count of any of the indictments, (4) he and United States of America have entered into a plea agreement that contemplates that United States of America will move "the court", presumably referring to this court (but perhaps not), at the trial of the other defendants or at Ottesen's sentencing, to dismiss Ottesen from the "pending Indictment", (5) the plea agreement provides that it "is limited to the United States Attorney's Office for the Northern District of Texas and does not bind other federal, state or local prosecuting authorities", (6) the intent of United States of America apparently, and notwithstanding the language of the plea agreement, is to seek an order from the transferee court dismissing as to Ottesen all counts of the indictments in which Ottesen is charged, (7) the transferee court would be required to evaluate whether the counts of the indictment in which Ottesen is charged should be dismissed, (8) the transferee court would be required to evaluate the merits of the plea agreement in order to determine whether it should be accepted, and (9) the requested transfer apparently was not made just for the convenience of the defendant, but was made pursuant to the plea agreement, with a suggestion that forum shopping might be involved.

## III.

### Analysis

Rule 20 provides, in pertinent part:

*(a) Indictment or Information Pending.* A defendant arrested, held, or present in a district court other than that in which an indictment or information is pending against that defendant may state in writing a wish to plead guilty or nolo contendere, to waive trial in the district in which the indictment or information is pending, and to consent to disposition of the case in the district in which that defendant was arrested, held, or present, subject to the approv-

al of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is arrested, held, or present, and the prosecution shall continue in that district.

. . . .

*(c) Effect of Not Guilty Plea.* If after the proceeding has been transferred pursuant to subdivision (a) . . . of this rule the defendant pleads not guilty, the clerk shall return the papers to the court in which the prosecution was commenced, and the proceeding shall be restored to the docket of that court. . . .

Fed.R.Crim.P. 20. The advisory committee notes on Rule 20, as originally enacted, gave the following explanation of the intent of the rule:

This rule introduces a new procedure in the interest of defendants who intend to plead guilty and are arrested in a district other than that in which the prosecution has been instituted. This rule would accord to a defendant in such a situation an opportunity secure a disposition of the case in the district court where the arrest takes place, thereby relieving him of whatever hardship may be involved in a removal to the place where the prosecution is pending. In order to prevent possible interference with the administration of justice, however, the consent of the United States attorneys involved is required.

*Id.,* advisory committee's note.

Read literally, Rule 20 applies only if the defendant unqualifiedly expresses a wish to plead guilty. There is no suggestion in the language of the rule that it can be utilized in any case other than one in which the defendant plans to plead guilty to all counts pending against him, and, in fact, does enter such a plea before the transferee judge. This, in effect, is the interpretation the Department of Justice placed on Rule 20 when it said in the manual it prepared for United States attorneys that:

Under Rule 20, the transferee court acquires *limited jurisdiction* to take a guilty or *nolo contendere* plea and pronounce sentence only. A plea of not guilty, after transfer, ends the transferee court's jurisdiction and requires transfer of the matter back to the original jurisdiction. . . .

Government's Memorandum to Court Regarding Rule 20 Transfer, filed 7/29/83, attachment at 1 (emphasis added). As the manual correctly notes, the jurisdiction acquired by the transferee court is limited by the language of the rule to the doing of only two things, taking a plea of guilty (or plea of *nolo contendere*) and pronouncing sentence. The rule indicates that if there is a plea of not guilty the case must remain on, or be restored to, the docket of the originating court.

At another point in the manual, the Department of Justice inconsistently states that:

The transferee court, in a Rule 20 proceeding, has jurisdiction to receive a plea of guilty to less than all the counts of an indictment or information and may dismiss the remainder on motion of the U.S. Attorney *Warren v. Richardson,* 333 F.2d 781 (9th Cir.1964). Such procedure should be with the approval of the U.S. Attorney in the district in which the offense was committed.

*Id.* at 3. As is reflected by the pertinent contention of Warren and the Ninth Circuit's response, the holding in *Warren v. Richardson* is a precarious prop for the manual's inconsistent assertion:

Warren next contends, in effect, that since, after the transfer of the two-count indictment from California to Nevada pursuant to Rule 20, he pleaded guilty only to Count I, and pleaded not guilty to Count II, the Nevada court was without jurisdiction to accept the guilty plea but was required to re-transfer the proceeding back to California.

Rule 20 provides, in part, that if after the proceeding has been transferred the defendant pleads not guilty, the clerk shall return the papers to the court in which the prosecution was commenced. But War-

ren's plea of not guilty to Count II became non-existent as soon as that count was dismissed upon the motion of the United States Attorney. Warren does not argue that the transferee court was without jurisdiction to dismiss that count and he is hardly in a position to do, since he is not aggrieved by that action. While the Nevada court orally accepted the plea of guilty to Count I a few moments before Count II was dismissed, such acceptance became effective as soon as the latter action was taken. Under the indicated circumstances the Nevada court had jurisdiction to accept that plea.[ ]

333 F.2d 781, 783 (9th Cir.1964) (footnote omitted). To say the least, the reasoning of the Ninth Circuit is of doubtful validity. A more logical justification for the Ninth Circuit's ultimate holding would have been that the defendant, after having agreed to the Rule 20 arrangement, should not be permitted to complain that it was improper. If the question had been whether the transferee court was authorized under Rule 20 to transfer the case back to the originating court once the intent of the defendant not to plead guilty to all counts became known to the transferee court, the Ninth Circuit undoubtedly would have upheld the retransfer.

In an article published in 1948, shortly after Rule 20 was enacted, the rule's purposes and intended benefits were explained:

Rule 20 is a revolutionary procedure in criminal actions. I think it may be fairly stated that the purpose of the rule was perhaps two-fold in nature. Primarily, it was intended, as the makers of the rule indicated, to confer a benefit upon a defendant charged with crime, and to lighten his burden and save him the trouble and indignity of being transported back by removal proceedings to the place where he was indicted, if he wishes to enter a plea of Guilty.

Of course, there is a secondary benefit, too, to the United States, in that there results a great saving of expense in the transportation of officers to and from the place of apprehension of the defendant and the expense incident to the transportation of the defendant back to the place of indictment.

Hon. Louis E. Goodman, *Revolutionary Procedure in Criminal Actions,* 8 F.R.D. 338, 338–39. Judge Goodman cautioned that "thoughtful consideration on the part of those who administer the rule" should be given "because there may result abuses that may undermine what the committee which devised the rule considered its very salutary purposes." *Id.* at 339. He explained those potential abuses and related problems as follows:

In my opinion there is an imminent abuse of the rule that is inherent in the rule itself. If a person commits a crime, and then flees, his first thought in flight, of course, is to escape apprehension. But secondarily he can always have in the back of his mind that the ultimate destination in flight shall be a place where he would most like to make his plea, if apprehended. And it will not take long in the span of years that is before us, before the opportunities of such procedure become generally known, just as the various techniques in connection with the filing of petitions for writs of habeas corpus have become known to the inmates of penitentiaries all over the United States. I believe there is a grave probability of the development of a widespread criminal racket. Crimes of violence may be committed and when the offenders flee, they will, in effect, select the place and jurisdiction in which judgment will be passed upon them. That I think is something the seriousness of which may not now be apparent but which, as time goes on, will become quite clear. It is true that the United States Attorneys have, in a manner of speaking, a right of veto. But even that safeguard, in my opinion, is inadequate.

*Id.* at 341. Put another way, the envisioned abuse was forum shopping, both by the defendant and the prosecutor, for sentencing purposes. The potential for abuse would be greatly enhanced if the transferee court were not only to be asked to take a plea of guilty and pronounce sentence, but, in addition, to pass judgment on the propriety a plea agreement and dismissal of counts of the indict-

ment. Then, there would be the added risk of forum shopping by both parties for a court that is likely to approve a questionable plea agreement, as well, perhaps, for one that is likely to impose a sentence in keeping with the wishes of the parties.

In *Hutto v. United States*, the court, after noting that "the intent [of Rule 20] is to relieve the prisoner from the hardship of removal", explained the limited circumstances when a transferee court has jurisdiction to proceed:

> His right to the transferee jurisdiction is dependent on many factors. First, he must consent to the transfer in a form that indicates his clear intention to plead guilty or nolo contendere. Next, he must obtain consents from transferor and transferee District Attorney. Then he must enter the proper plea under the rule. The court must accept the plea. Lastly, he must not rescind his action by pleading not guilty after the transfer has been completed.

309 F.Supp. 489, 493 (D.S.C.1970).

Needless to say, the effort of Ottesen and United States of America to invoke Rule 20 in the instant action was not made to relieve Ottesen "from the hardship of removal." His travel burden was not lightened, and apparently little, if any, thought was given by United States of America, or by Ottesen himself, to saving Ottesen the trouble and indignity of being transported to the place where he was indicted. In addition to the trips he made to Fort Worth before he and United States of America made their plea agreement, Ottesen has been in Fort Worth before this court on four occasions after his plea agreement was made. On three of those occasions, Ottesen and United States of America chose to remain silent about the fact that they already had made a plea agreement. On none of those occasions did they request the court to accommodate Ottesen's wish to plea guilty to the information pursuant to the plea agreement. Obviously, United States of America and Ottesen had goals in mind that were not contemplated by the drafters of Rule 20. At least some of those objectives are, in the judgment of this court, beyond the scope of what can be accomplished under Rule 20.

Any attempt by the transferee court to determine the merits of the charges against the defendant "clearly exceed[s] the limits of the delegated jurisdiction under Rule 20." *United States v. Khan*, 822 F.2d 451, 455 (4th Cir.1987). In *Khan*, the government took the position that the transferee court's jurisdiction pursuant to Rule 20 "was limited to accepting a guilty plea and imposing sentence." *Id.* at 454. The Fourth Circuit agreed, saying:

> The unmistakable assumption underlying Rule 20 is that a transfer will occur only when a defendant first concedes criminal culpability thereby waiving any trial on the charges. *The transfer is then purely for the purpose of imposing sentence.* Subject matter jurisdiction is, thereby, shifted from the charging district to the transferee district for the narrow purpose envisioned in the rule. *Perry v. United States,* 432 F.Supp. 645, 648 (M.D.Fla. 1977). A subsequent attempt by a defendant to change his plea to not guilty instantly divests the transferee court of subject matter jurisdiction and requires that the proceedings be returned "to the court in which the prosecution was commenced." Fed.R.Crim.P. 20(c). . . .

*Id.* at 455 (emphasis added). And:

> The dictates of the Rules of Criminal Procedure and the proper limits on the subject matter jurisdiction of the district court cannot be evaded by artful terminology. Regardless of the labels attached to the action below, there can be no doubt that the district court sought to determine the merits of the charges against Khan, a goal that clearly exceeded the limits of the delegated jurisdiction under Rule 20. This cannot be permitted.
>
> As we previously indicated, our conclusion that the entry of acquittal in this case violated Rule 20 also resolves appellee's allegations of double jeopardy. *Any determinations made by a Rule 20 transferee court beyond those necessary for the acceptance of the plea and the imposition of sentence are without legal effect. . . .*

*Id.* (emphasis added).

If, as *Khan* explained, "[t]he transfer is . . . purely for the purposes of imposing sen-

tence" and "[a]ny determinations made by a Rule 20 transferee court beyond those necessary for the acceptance of the plea [of guilty] and the imposition of sentence are without legal effect", a transfer in a case such as this, in which the transferee court would be called upon to do the things described under the "Question to be Decided" heading in this memorandum opinion and order, would not be a proper Rule 20 transfer.[4] When a district court passes judgment on the propriety of a plea agreement or decides whether indictments, or counts thereof, should be dismissed, the court performs functions entirely separate and distinct from the functions the transferee court is permitted to perform following a Rule 20 transfer, *i.e.* the taking of a plea of guilty and pronouncing sentence.

If the plea agreement contemplates dismissal of counts of the indictment, "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed. R.Crim.P. 11(e)(2). Congress directed the Sentencing Commission to promulgate and distribute to the courts of the United States general policy statements, including the appropriate use of the authority granted under Rule 11(e)(2) to accept or reject such a plea agreement. 28 U.S.C. § 994(a)(2)(E). The Commission complied by adopting U.S.S.G. 6B1.1, p.s., 6B1.2, p.s., and 6B1.3, p.s. In the case of a plea agreement that contemplates dismissal of counts of the indictment, the standard for its acceptance, as established by the Commission, is as follows:

(a) In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

*Provided,* that a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.

U.S.S.G. § 6B1.2(a), p.s. The decision to accept or reject the plea agreement should be deferred until after the court has considered the presentence report, if one is required:

The court shall defer ... the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1.

U.S.S.G. 6B1.1(c), p.s.

Thus, the district court which decides whether the plea agreement is a proper one should engage in a fact-intensive evaluation before making the decision. The overall evaluation necessarily will include as one of its elements an evaluation of the merits of the charges against the defendant that are proposed to be dismissed pursuant to the terms of the plea agreement. As noted above, a transferee court under Rule 20 does not have jurisdiction to engage in conduct of that kind. There is good reason why that is so—the originating court normally would have greater access of the kinds of information that should be taken into account in the evaluation of a plea agreement—particularly in a case such as this in which the originating court will be taking plea agreements from co-defendants, will be sentencing co-defendants, and, generally, will have ready access to information of the kinds that would help determine whether a particular plea agreement would generate a sentence of a kind contemplated by the guidelines and that would take

---

4. A plea agreement was involved in *United States v. Khan,* but the Fourth Circuit was not called upon to decide, and did not decide, the issue of whether the transferee court had jurisdiction to

pass on the plea agreement or to dismiss counts of the indictment pursuant to the plea agreement.

into account to a proper degree the sentencing factors mentioned in 18 U.S.C. § 3553.

In the instant action, either this court or the transferee court will, according to the plea agreement, be asked to dismiss the indictment (or indictments) as to Ottesen. A dismissal of an indictment can be filed by the United States Attorney only by leave of court. Fed.R.Crim.P. 48(a). A district court, at least one in the Fifth Circuit, has the discretion to refuse to grant leave to dismiss an indictment if it concludes that "the prosecutor is motivated by considerations clearly contrary to the manifest public interest", or that "the prosecutor's actions clearly indicate a 'betrayal of the public interest.'" *United States v. Hamm*, 659 F.2d 624, 628–29, 631 (5th Cir. Unit A 1981) (quoting *United States v. Cowan*, 524 F.2d 504, 514 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976)). The exercise of discretion whether to dismiss an indictment quite clearly goes beyond the acceptance of a plea of guilty and pronouncement of a sentence, the only two things a court to whom a Rule 20 transfer has been made has jurisdiction to do. As is true with the related matter of making a decision whether to accept a plea agreement, the decision whether to dismiss an indictment is fact-intensive and more logically would be performed, particularly in a multi-defendant, ongoing case such as the instant one, by the originating court.

The closest either party came to providing the court with helpful legal authority in the memoranda they filed in response to the court's July 23 order was the citation by United States of America in its memorandum of *Warren v. Richardson*, which has been discussed at an earlier point in this memorandum opinion and order. As well as this court can determine, there is no legal authority that would support a Rule 20 transfer as to Ottesen under the circumstances of this case. On the other hand, the wording of the rule itself, as well as the general expressions of its function and intent, as discussed above, lead to the conclusion that Rule 20 cannot be used in a case such as Ottesen's and that a transferee court would not have jurisdiction to do the things that it would be required to do if a Rule 20 transfer were to be made in this case. Consequently, the court is ordering the clerk not to make a Rule 20 transfer as to Ottesen and that the case against Ottesen proceed in this court. The court sees no reason why the motion of United States of America to withdraw its motion to dismiss the second superseding indictment should not be granted.

IV.

*ORDER*

The court ORDERS that the motion to withdraw filed by United States of America on July 15, 1993, be, and is hereby, granted and that the motion to dismiss filed June 18, 1993, to which such motion to withdraw is directed, be, and is hereby, withdrawn.

The court further ORDERS the clerk not to make a Rule 20 transfer as to Ottesen under the existing circumstances in this action and that no such transfer be made in the future as to Ottesen without authorization of an order of the court.

The court has not been asked to pass judgment on the May 19, 1993, plea agreement between Ottesen and United States of America. However, the court would note the obvious—the plea agreement presumably would have to be rejected because of its provision concerning transfer of this case to the District of Kansas for disposition.