FILED
United States Court of Appeals
Tenth Circuit

December 18, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

OSCAR CRUZ-LOPEZ,

        Defendant - Appellant.

No. 08-2250
(D.C. NO. 1:08-CR-00159-MCA-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **EBEL**, and **GORSUCH**, Circuit Judges.

---

Oscar Cruz-Lopez, who reentered the United States illegally, seeks to undo

the benefits he has received under a "Fast Track" plea agreement, pointing to a

clerical error in the original information. The government promptly issued a

superceding information correcting the error, and Mr. Cruz-Lopez proffered no

objection to this information, nor did he object to his within the advisory

guidelines sentence. On appeal, he maintains that he never pleaded guilty to the

---

    [*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

superceding information, and in the alternative, that the plea agreement's waiver of his right to appeal is invalid. Because Mr. Cruz-Lopez's plea bargain is valid and he waived his right to appeal, we must enforce the plea agreement and dismiss the appeal.

## I. FACTUAL BACKGROUND

Oscar Cruz-Lopez, born in Mexico, came to the United States when he was seven-years old and spent nearly all his adult life in southern New Mexico. At a young age, he developed an addiction to drugs and alcohol. This history of drug and alcohol abuse led to a series of convictions including driving under the influence of alcohol and other offenses.

In September 1998, a state court jury in Las Cruces, New Mexico, convicted Mr. Cruz-Lopez of the second-degree felony of trafficking in cocaine. The court sentenced him to a prison term of nine years; the court suspended four years and six months of that sentence. In March 2004, following his release from prison, the Bureau of Immigration and Customs Enforcement took him into custody and deported him to the Republic of Mexico.

In 2005, Mr. Cruz-Lopez illegally reentered the United States. In June 2006, a state court jury in Las Cruces, New Mexico, convicted Mr. Cruz-Lopez of a fourth-degree felony (battery on a police officer) as well as six misdemeanor charges. He was sentenced to a prison term of three years and six months. In November 2007, Mr. Cruz-Lopez was released to Bureau of Immigration and

2

Customs Enforcement custody.

While in Bureau of Immigration and Customs Enforcement custody, the United States government filed a criminal complaint against Mr. Cruz-Lopez for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(b)(1) and (b)(2). Mr. Cruz-Lopez waived his right to a preliminary hearing and agreed to continue the time before his case could be presented to a grand jury. On January 30, 2008, Mr. Cruz-Lopez entered a Fast Track plea agreement before a magistrate judge to the Information that alleged that he illegally reentered the United States on or about November 30, 2007.

The Fast Track Plea Agreement, entered pursuant to Rule 11(c)(11)(C) of the Federal Rules of Criminal Procedure, stated that the government agreed to a reduction in Mr. Cruz-Lopez's recommended offense level in return for his agreeing "not to seek any further reduction, departure, deviation, or variance in the Final Adjusted Offense Level or the Criminal History Category as determined by the Court." Rec. vol. 1, doc. 17, at 8. In exchange for the reduced offense level, the agreement also stated that "[t]he Defendant knowingly waives the right to appeal any sentence within the applicable sentencing guideline range and imposed in conformity with this plea agreement." Id. at 9.

During the plea colloquy, the magistrate judge questioned Mr. Cruz-Lopez to ensure that he understood that he was entering a plea of guilty and he was doing

3

so voluntarily. The magistrate judge advised the defendant "you are giving up your right to appeal the sentence, so long as the sentence is within the guideline range, and significantly, you are giving up your right later on to challenge, in any other proceeding, your conviction and sentence for any reason, unless if [defense counsel] was constitutionally an ineffective attorney." Id. vol. 3, doc. 55, at 39–40. The court then asked the defendant: "Do you understand you are giving up these rights?" Id. at 40. The defendant responded: "Yes, your honor." Id. Prior to sentencing, Mr. Cruz-Lopez discovered that officials from the Bureau of Immigration and Customs Enforcement actually found that he reentered the United States on August 14, 2005, rather than November 30, 2007, as the information alleged. Mr. Cruz-Lopez sought to withdraw his plea because the change in entry date would change the calculations for his sentence. Defense counsel maintained that at least two of the calculations used to determine the sentence would change: "One, that he was under judicial sentence at the time that he reentered the country, and that he was on a term of probation, and those are one and two points respectively that would change." Id. vol. 3, doc. 34, at 6.

The motion to withdraw requested that, "[u]nless the prosecuting attorney files a superceding criminal information alleging the correct date of offense," the court should "allow defendant to withdraw his plea and proceed to trial to contest the date of offense." Id. vol. 1, doc. 26, at 81 (emphasis added). The government did not oppose the motion. At a May 21, 2008 hearing, the government explained

4

that it planned to file a superceding indictment to correct the error. The government opposed allowing Mr. Cruz-Lopez to file objections or sentencing memoranda because fast track plea agreements do not allow for them. The court rejected this reasoning, and stated it would defer any action on the motion to withdraw the plea until the probation office submitted an addendum to the Presentencing Report (PSR). On May 22, 2008, the government filed a Superseding Information that corrected the date of offense—alleging that Mr. Cruz-Lopez was found in the United States on August 14, 2005.

On September 18, 2008, the court held a presentencing hearing. The court again deferred any ruling on the motion to withdraw the plea, and asked the parties to submit sentencing memoranda addressing any miscalculations stemming from the corrected date. The court rescheduled the sentencing "for as soon as possible after October 6" and stated it would then review the addendum to the presentencing report and its new calculations. Id. vol. 3, doc. 49, at 15. Defense counsel did not challenge the court's proposal.

The revised PSR recommended a "total offense level" of 21 (with a corresponding guideline range of 70 to 87 months), a Rule 11(c)(1)(C) level of 19 (with a corresponding guideline range of 57 to 71 months), and a criminal history category of V. The offense level calculation included a 16-level increase for Mr. Cruz-Lopez's earlier deportation following his conviction for drug trafficking. The PSR also stated that if Mr. Cruz-Lopez had been convicted at trial of the

5

offense, the guideline calculations would be based on an offense level of 24 combined with a criminal history of V, resulting in a guideline imprisonment range of 92 to 115 months.

At the October 7, 2008 Rule 11 sentencing hearing, the district court sought to hear "any arguments" and "any objections" about the presentencing report. Id. at 23. Defense counsel inquired as to the propriety of the 16-level increase, and agreed that "the law appears to support it." Id. vol. 3, doc. 52, at 25. The court asked whether defense counsel had "any other objections or other matters" he would like to raise, and defense counsel made a request regarding having Mr. Cruz-Lopez housed in a nearby correctional facility, and asked that the court recommend his client partake in the "500-hour" substance abuse program. Id. The court next gave Mr. Cruz-Lopez a chance to speak on his own behalf, and he stated that he has already served two years and would like to leave the United States. The court, referencing the plea agreement, calculated the offense level to be 18, and determined that the PSR's recommended criminal history of V overrepresented Mr. Cruz-Lopez criminal history. The court applied a criminal history category of IV to its calculation. The court calculated the advisory guideline range to be 41 to 51 months, and imposed a 41 month sentence of imprisonment. As requested by defense counsel, the court also recommended Mr. Cruz-Lopez serve his sentence in La Tuna, Texas, and recommended that he participate in the Bureau of Prisons' 500-hour drug and alcohol treatment

6

program. When asked, defense counsel replied that he did not object to this sentence. The court finally noted that Mr. Cruz-Lopez had waived his right to appeal the sentence imposed under 18 U.S.C. § 3742(a).

On appeal, Mr. Cruz-Lopez raises three arguments: (1) the appellate waiver is invalid; (2) the sentence imposed by the district court is unreasonable; and (3) the district court failed to credit the time Mr. Cruz-Lopez spent in state custody after he was found in the United States. Because we find the appellate waiver dispositive, we do not reach the second two issues. See United States v. Smith, 500 F.3d 1206, 1210 (10th Cir. 2007) (the appellate waiver "encompasses all appellate challenges to the sentence other than those falling within the explicit exception for challenges to upward departures. . . . [and] challenges to the District Court's application of the offense-level adjustments clearly fall within the scope of the waiver").

## II. DISCUSSION

A. **Mr. Cruz-Lopez pleaded guilty and entered a waiver of his right to appeal.**

As a threshold matter, it is necessary to determine whether Mr. Cruz-Lopez pleaded guilty and waived his right to appeal. Mr. Cruz-Lopez admits that the language of the "Fast Track" plea agreement clearly constitutes a waiver of his right to appeal. He argues, however, that "the appellate waiver contained in the plea agreement is invalid because it was involuntary and was subsequently

7

obviated by the filing of a Superseding Information which never resulted in the ensuing entry of a knowing and voluntary plea." Aplt's Br. at 11–12. He also claims that there was no "meeting of the minds" with regards to a plea of the Superseding Indictment. Id. at 13. Finally, he argues that it would be a miscarriage of justice to enforce the plea agreement against him because he did not enter into the agreement. All of these are different articulations of the same argument: that Mr. Cruz-Lopez never entered into a guilty plea agreement with the government with respect to the superceding indictment.

Mr. Cruz-Lopez misapprehends the function of a superceding indictment. "The term 'superseding indictment' refers to a second indictment issued in the absence of a dismissal of the first." United States v. Rojas-Contreras, 474 U.S. 231, 237 (1985) (Blackmun, J., concurring). The Tenth Circuit in United States v. Bowen, 946 F.2d 734, 736 (10th Cir. 1991) stated: "[w]e have found no authority which supports the proposition that a superceding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air." Numerous circuits have held in similar contexts that filing a superceding indictment does not make the earlier indictment void and that the two can co-exist. United States v. Walker, 363 F.3d 711, 715 (8th Cir. 2004) ("Other circuits have clearly stated that a superceding indictment does not in effect dismiss the original indictment and that both indictments can co-exist." (citing United States v. Vavlitis, 9 F.3d 206, 209 (1st Cir. 1993) ("It is clear that the grand jury's return of

8

a superceding indictment does not void the original indictment."); <u>Bowen</u>, 946 F.2d at 736; <u>United States v. Friedman</u>, 649 F.2d 199, 202 (3d Cir. 1981) (holding that the grand jury's return of a superceding indictment did not "void" original indictment))).

Upon review of the record, Mr. Cruz-Lopez's description of the events clearly fails. The defendant is correct that he moved to withdraw the plea of guilty but this was for the limited purpose of obtaining the very superceding information that the government filed. The court did not rule on the motion to withdraw because defense counsel explicitly stated that no ruling was necessary. The defendant never denied that he was entering a plea of guilty nor objected to the sentence. The defendant was trying to withdraw the plea so that he could obtain a lower offense level, which he achieved when the government entered the superceding information. The record shows that Mr. Cruz-Lopez received the three-level downward offense level adjustment benefit of the Fast Track plea agreement, and received a sentence at the low end of the advisory guideline range. There is nothing to indicate that after accomplishing this goal, the defendant had any further interest in withdrawing the plea. Beyond the clear parties intent during the district court proceedings, caselaw also supports that there was no need to begin proceedings anew with the filing of the superceding indictment. <u>Bowen</u>, 946 F.2d at 736. Having determined that Mr. Cruz-Lopez pleaded guilty, we next consider the validity of the plea bargain's waiver of the right to appeal.

9

**B.     Was the plea agreement a valid waiver of Cruz-Lopez's right to appeal?**

In United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004), we adopted a three-part analysis to determine whether an appellate waiver is enforceable: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein." Id. at 1325. Here, analysis of all three prongs undisputedly underscore the waiver's validity.

> a.     The disputed appeal falls within the scope of the waiver of appellate rights.

"The first prong of the analysis requires the court to determine if the disputed appeal falls within the scope of the appellate waiver." Id. at 1325. In determining a waiver's scope, "[the court] will strictly construe[] [the appellate waiver] and any ambiguities will be read against the Government and in favor of a defendant's appellate rights." Id. (quoting United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003) (en banc)).

In his plea agreement, Mr. Cruz-Lopez specifically waived the right to appeal any "any sentence within the applicable sentencing guideline range and imposed in conformity with this plea agreement." Rec. vol. 1, doc. 15, at 9. He also waived the right to "any collateral attack" on his sentence, with the exception of an ineffective assistance of counsel claim. This appeal thus falls squarely and clearly within the scope of the plea agreement. Id. Mr. Cruz-Lopez does not raise an ineffective assistance of counsel claim on appeal; rather he is challenging the sentencing guideline range and the sentence

10

imposed. Both of these claims fall within the scope of the waiver.

                b.      The waiver was knowing and voluntary.

"The second prong of the analysis requires the court to ascertain whether the defendant knowingly and voluntarily waived his appellate rights." Hahn, 359 F.3d at 1325. The burden is on the defendant to show that he did not knowingly and voluntarily waive his right to appeal. United States v. Ochoa-Colchado, 521 F.3d 1292, 1299 (10th Cir. 2008). The court looks to two factors to determine if the plea was knowing and voluntary: (1) does the language of the agreement state that the defendant entered the agreement knowingly and voluntarily, and (2) was there an adequate Federal Rule of Criminal Procedure 11 colloquy. Hahn, 359 F.3d at 1325. Mr. Cruz-Lopez's statements and actions easily clear both hurdles. First, paragraph 5 of the plea agreement states that Mr. Cruz-Lopez "knowingly waives the right to appeal . . . ." Rec. vol. 1, doc. 15, at 9. Further, Mr. Cruz-Lopez signed directly below the line: "I understand the agreement and voluntarily sign it." Id., doc. 17, at 10. The second factor is also met because during the plea colloquoy, the district court clearly informed Mr. Cruz-Lopez and his counsel that he was waiving his right to appeal, asked him whether he objected to the plea agreement and whether the waiver was voluntary. Mr. Cruz-Lopez indicated every time that he understood what he was agreeing to and did not object. Defense counsel similarly did not object. Id. vol. 3, doc. 55, at 39–40. The record belies Mr. Cruz-Lopez's suggestions otherwise, and all evidence in the record shows that Mr. Cruz-Lopez knew what he was pleading guilty to, and did so knowingly and voluntarily.

11

c. Enforcement of the waiver does not result in a miscarriage of justice.

As with the second prong of Hahn, the burden belongs to Mr. Cruz-Lopez to show that enforcement of the waiver would result in such a miscarriage of justice and again Mr. Cruz-Lopez fails to carry his burden. Ochoa-Colchado, 521 F.3d at 1299. There are four typical situations in which an appellate waiver will be found to be unenforceable as a miscarriage of justice: (1) where the district court relied on an impermissible factor such as race; (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid; (3) where the sentence exceeds the statutory maximum; or (4) where the waiver is otherwise unlawful." United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001).

None of these factors are met here. There were no unacceptable factors, such as race, employed in sentencing the defendant. Nor does the defendant claim ineffective assistance of counsel. The sentence does not exceed the statutory maximum. Finally, the waiver is not otherwise "unlawful" as it does not seriously affect "the fairness, integrity or public reputation of judicial proceedings." Hahn, 359 F.3d at 1327. In support of his contention that to allow the waiver to stand would be a miscarriage of justice, Mr. Cruz-Lopez again argues that he did not enter a plea agreement to the superceding indictment. As discussed above, this argument clearly fails. We thus conclude there is no miscarriage of justice in applying the plea waiver.

12

## III. CONCLUSION

Mr. Cruz-Lopez entered a waiver of his right to appeal as part of his Fast Track guilty plea. His assent entitled him to a Fast Track plea agreement which resulted in a three-level reduction in his offense level. We find that his valid waiver of his right to appeal forecloses his attempt to bring this appeal. Accordingly, the plea agreement is enforced and the appeal is dismissed.

Entered for the Court


Robert H. Henry
Chief Circuit Judge

13