UNITED STATES of America,
Plaintiff–Appellee,

v.

George Chukwuemeka OBI,
Defendant–Appellant.

No. 02–1693.

United States Court of Appeals,
Sixth Circuit.

Dec. 19, 2003.

Kathryn A. McCarthy, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

George Chukwuemeka Obi, pro se, White Deer, PA, Matthew M. Robinson, Cincinnati, OH, for Defendant–Appellant.

Before MERRITT, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM.

The defendant, George Chukwuemeka Obi, appeals from his convictions both for conspiracy to possess with intent to distribute and to distribute 100 or more grams of heroin and for aiding and abetting the possession with intent to distribute 100 or more grams of heroin. Specifically, Obi contends (1) that the evidence adduced at trial was insufficient to support his convictions; (2) that he was prejudiced by being tried on the original indictment after the district court dismissed a subsequent, superseding indictment; (3) that the government violated the provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174; and (4) that the prosecution illegally offered a benefit to Obi's co-conspirator in exchange for trial testimony, in violation of 18 U.S.C. § 201(c)(2). We find no reversible error and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Detroit Police Officer Michael Williams, acting undercover and through an informant, initiated contact with Jude Nimako in the fall of 2000. Eventually, Williams negotiated a deal with Nimako by which the undercover officer would purchase 300 grams of heroin from Nimako for $31,500. Prior to the designated time for the exchange of cash and heroin, law enforcement authorities observed an individual driving a "red Mazda sports car" park next to Nimako's Jeep in a restaurant parking lot. Nimako got out of his vehicle and entered the Mazda through the front passenger door. After some conversation, however, the heroin sale to Williams was put off until the following morning.

At that time, Detroit police again observed Nimako's Jeep and the red Mazda arrive at the designated sale spot and park near each other. On this occasion, Obi exited the Mazda, walked to the Jeep with a package in his hand, and entered the Jeep on the passenger's side. With the aid of binoculars, another police officer was able to discern that the package the defendant carried was a baggie containing a white, powdery substance. She also observed Obi hand the package to Nimako in the Jeep, exit the Jeep empty-handed, and return to his own vehicle. Later, after Nimako reached toward the back seat with the package, the police arrested both Nimako and Obi at the scene and recovered baggies containing more than 100 grams of heroin from under the back seat of Nimako's Jeep.[1]

The grand jury originally indicted Nimako and Obi for conspiracy to possess with intent to distribute and to distribute heroin and for aiding and abetting each other in the possession of heroin with intent to distribute. Additionally, Nimako alone was charged in a third count with the actual possession of heroin with intent to distribute. Subsequently, but still prior to Obi's arraignment, the grand jury returned a superseding indictment also charging the defendant with the possession offense. That superseding indictment was eventually dismissed, however, and Obi proceeded to trial only on the charges contained in the original indictment. At the conclusion of the trial, the jury determined that the defendant was guilty as charged, and the district judge sentenced Obi to concurrent 63–month prison terms for the offenses.

## II. DISCUSSION

### 1. Sufficiency of the Evidence

■ Obi first challenges the legal sufficiency of the evidence used to convict him, contending that the government failed to produce any evidence of a criminal conspiracy and that his mere presence at the scene of the arrest or proof of a buyer-seller relationship with Nimako was insufficient to justify the jury's verdict. Furthermore, he argues that much of the damaging trial testimony offered against him was given by Nimako, who – as a convicted drug dealer – was allegedly not worthy of belief.

In analyzing any challenge to the sufficiency of the evidence used to convict a defendant, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

---

1. Although Officer Diaz testified at trial that she did not see Nimako reach toward the back seat until *after* Obi exited Nimako's Jeep, Nimako testified that the placement of the drugs under the back seat occurred prior to Obi exiting the vehicle and returning to the Mazda.

a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, however, we may not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993).

In order to establish a drug conspiracy, the prosecution must prove "the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." *United States v. Kincaide,* 145 F.3d 771, 781 (6th Cir.1998) (quoting *United States v. Lee,* 991 F.2d 343, 348 (6th Cir. 1993)). Although Obi is correct in his assertions that an individual's mere presence at a crime scene is not sufficient to establish a conspiracy, *see, e.g., United States v. Braggs,* 23 F.3d 1047, 1051 (6th Cir.1994), and that a buyer-seller relationship alone is not sufficient to tie an individual to a conspiracy, *see United States v. Anderson,* 89 F.3d 1306, 1310 (6th Cir. 1996), the evidence of the defendant's guilt in this matter is much stronger than Obi would have us believe.

The prosecution did not rely solely upon the defendant's presence near Nimako's Jeep, nor upon a mere buyer-seller relationship, to support the conspiracy conviction. Additional evidence adduced at trial established that Obi carried a package from his car to the Jeep on the day of the co-defendants' arrest, that Nimako then placed the package under his own back seat, and that the package was later recovered and found to contain heroin. Nimako himself also testified concerning his dealings and arrangements with Obi, testimony to which the jury apparently gave credence. According to Nimako's account, Obi and Nimako worked in tandem and by agreement to supply buyers with requested amounts of heroin. Such testimony is sufficient to meet the constitutional standards necessary to support the convictions returned by the jury in this matter.

Furthermore, Obi's complaint that Nimako is not worthy of belief because of his involvement in criminal activity and because of his receipt of largesse from the government does not call into question the legitimacy of the convictions. In exchange for his trial testimony against the defendant, Nimako was promised a recommendation of a reduced sentence so as to avoid the possibility of deportation. As stated previously, however, the credibility of the witnesses at trial cannot be weighed by an appellate panel. The jurors themselves had the opportunity to hear and observe the witnesses during the criminal proceedings and resolved all issues of credibility to their own satisfaction in reaching a verdict. The defendant's challenge to the denial of his motion for judgment of acquittal is thus without merit.

**2. Validity of Initial Indictment After Dismissal of Superseding Indictment**

The defendant next insists that his prosecution under the original indictment was in violation of his due process rights and fundamental principles of fairness. According to Obi, once the government obtained its first superseding indictment (adding a charge against Obi for possession of heroin with intent to distribute), the initial indictment ceased to exist or have any effect. Thus, contends the defendant, when the district court later ordered the dismissal of the superseding indictment, no charging instrument upon which the prosecution could be based was left extant.

In its order dismissing the first superseding indictment, the district court implicitly rejected the validity of the defendant's argument by stating that, despite the dismissal of the later charging instru-

ment, "the underlying Indictment will remain in full force and eff[ect] as to defendant GEORGE CHUK[W]UEMEKA OBI, only." Although this circuit has not explicitly ruled on a similar challenge, in *United States v. Garcia*, 268 F.3d 407 (6th Cir. 2001), *cert. denied*, 535 U.S. 1089, 122 S.Ct. 1985, 152 L.Ed.2d 1041 (2002), *overruled on other grounds in United States v. Leachman*, 309 F.3d 377, 383 (6th Cir. 2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1769, 155 L.Ed.2d 527 (2003), we did offer an implicit rejection of the underlying rationale for the defendant's argument. In that case, a federal grand jury had returned a second superseding indictment and then, days later, a third superseding indictment. Discussing the dismissal of the third superseding indictment against Garcia for improperly expanding the charges contained in the original charging instrument, we noted that "[t]he government did not appeal this dismissal. *Thus the second superseding indictment remained in effect." Id.* at 410 (emphasis added).

Our sister circuits are in agreement with the conceptual underpinnings of the *Garcia* decision and have even expressly addressed the issue raised here by Obi. In *United States v. Bowen*, 946 F.2d 734, 736 (10th Cir.1991), for example, the Tenth Circuit stated that it had "found no authority which supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air." Likewise, in *United States v. Stricklin*, 591 F.2d 1112, 1115–16 n. 1 (5th Cir.1979), the court concluded that:

> A superseding indictment may be returned at any time before a trial on the merits. Indeed, two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment. Since the original indictment apparently was nev-

er dismissed, there are technically two pending indictments against [the defendant], and it appears that the government may select one of them with which to proceed to trial.

(Citations omitted.) *See also United States v. Cerilli*, 558 F.2d 697, 700 n. 3 (3d Cir.1977) (return of a superseding indictment means simply that there are then two pending indictments against defendants and prosecution may select one of them with which to proceed).

Here, Obi was subject to prosecution and placed in jeopardy on only one indictment. No constitutional impediments, therefore, foreclosed the trial of the defendant on the initial indictment after dismissal of the first superseding indictment. This allegation of error by Obi is also without merit.

### 3. Speedy Trial Act Claim

■ Pursuant to the provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, a criminal defendant must be brought to trial within 70 days of the filing date of the indictment or the date the defendant appears before a judicial officer, whichever is later. *See* 18 U.S.C. § 3161(c)(1). Although certain periods of time are, by statute, excludable from the time calculation, *see* 18 U.S.C. § 3161(h), Obi now contends that his Speedy Trial Act rights were violated because, after dismissal of the first superseding indictment, he was not tried until what amounted to one year from the filing of the initial indictment.

Ordinarily, failure of the government to abide by the dictates of the Speedy Trial Act will result in dismissal of the indictment, upon motion by the defendant. *See* 18 U.S.C. § 3162(a)(2). As further provided in the statute, however, "[f]ailure of the defendant to move for dismissal prior to trial ... shall constitute a waiver of the

right to dismissal under this section." *Id.* Because Obi failed to file such a pretrial motion, his Speedy Trial Act claims have been effectively waived. In reaching this conclusion, we reject the defendant's contention that his motion to dismiss the original indictment following dismissal of the superseding indictment was sufficient to prevent application of the waiver doctrine in this situation. Moreover, his argument that his failure to invoke the protection of the Speedy Trial Act worked only a forfeiture and not a waiver of his statutory right must likewise fail, because the statute specifically provides that the failure to file a pretrial motion for dismissal "shall constitute a waiver of the right to dismissal." *Id.*

### 4. Alleged Due Process Violation in Promise of Government Leniency

██ In a final issue, the defendant asks this court to find that the government's agreement with Jude Nimako to recommend a reduced prison sentence of 24 months in exchange for testimony against Obi violates the provisions of 18 U.S.C. § 201(c)(2). (JA, 70–71) Pursuant to that statutory provision:

> Whoever ... directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom ... shall be fined under this title or imprisoned for not more than two years, or both.

In *United States v. Ware*, 161 F.3d 414, 418 (6th Cir.1998), we held that the prohibitions of 18 U.S.C. § 201(c)(2) do not apply to the United States government.

Moreover, even if they did, the criminal statute does not authorize the exclusion of the testimony offered, only the fining or incarceration of the guilty party. *See id.* at 424–25. This claim of error is, therefore, also without merit.

### III. *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court in its entirety.