NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1939
_____

UNITED STATES OF AMERICA

v.

FREDERICK SELLERS,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 10-cr-00434-001)
District Judge:  Honorable Renee M. Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
September 25, 2012

Before:   McKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: October 17, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Frederick Sellers appeals the judgment of the United States District Court for the

District of New Jersey sentencing him to 188 months' imprisonment and 5 years'

supervised release based upon his conviction for conspiracy to distribute five kilograms

or more of cocaine.  For the following reasons we will affirm.

## I.      Background

After being charged with drug-related offenses, Mario Estrada- Espinosa and Jose Luis Grimaldo-Valencia cooperated with the government by indentifying Sellers as a drug trafficker who purchased large amounts of cocaine from them.  Their cooperation resulted in Sellers's arrest.

Shortly thereafter, Sellers participated in a proffer session with the government, agreeing in advance that "[t]he government [could] use [his] statements and any information provided by [him] to cross-examine [him] and to rebut any evidence or arguments offered on [his] behalf" in any subsequent trial.  (Supp. App. at 109.)  During that meeting, the government and Sellers's counsel were aware that Espinosa had fled the country and would therefore be unavailable to testify at Sellers's trial.  Sellers, however, claims to have been unaware of that fact.  Indeed, although his lawyer had sent him a letter before the session informing him of Espinosa's unavailability, Sellers testified that he did not receive the letter until after the session had concluded.[1]  Sellers testified that he would not have participated in the proffer session had he received that letter in time, as knowing that Espinosa would be unavailable to testify against him would have made him think that he could "buil[d] a defense."  (Joint App. at 94.)

---

[1] Sellers's counsel testified that he never verbally told Sellers that Espinosa had left the country because he mistakenly believed that Sellers would have received the letter before the proffer session.  (*See* Joint App. at 74 ("I[] unfortunately [and] incorrectly[] assumed that the letter that I had mailed to [Sellers] … would more than likely reach him prior to the proffer[,] and … I … continued to go forward with the cooperation.").)

Even after learning that Espinosa had absconded, however, Sellers chose to meet with the government for a second time.[2] At that meeting, the government indicated its intent to file a complaint requiring Sellers to forfeit a truck that he had used to commit the crime for which he was charged, leading Sellers's counsel to believe that the "forfeiture of the truck" was "one aspect in addition to other aspects that were being discussed in connection with [a] cooperating plea agreement." (*Id.* at 30.) Subsequently, with the deadline to file the forfeiture complaint approaching, the government requested Sellers's assent to an extension of the time to file the complaint seeking that relief. Although Sellers's counsel communicated to Sellers that his refusal to consent to the extension could "be a deal breaker in light of other issues that were ongoing with cooperation" (*id.* at 37), Sellers ultimately rejected the government's request.

The government then ceased plea negotiations and indicted Sellers. Sellers, in turn, filed a motion to dismiss the indictment for prosecutorial vindictiveness, asserting that his refusal to consent to the extension of time to file the forfeiture complaint was the sole reason the government decided to cease negotiations and indict him. Although he "concede[d] that there[] [was] no presumption of vindictiveness" under the facts of his case,[3] he claimed "that the prosecutor's decision and the facts [of his case] support[ed] actual vindictiveness." (*Id.* at 117.) The District Court rejected that contention,

[2] Sellers testified that he continued to cooperate with the government because his lawyer advised him that, by participating in the first proffer session, his "back was against the wall" and "there was no turning back." (Joint App. at 95.)

[3] As discussed *infra* in Part II.A, "certain prosecutorial conduct raises a presumption of vindictiveness, which may then be rebutted by the government." *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998).

3

concluding that "Sellers … failed to provide [the] Court with evidence of actual vindictiveness on the part of the government." (*Id.*) To the contrary, as the Court pointed out, Sellers's "failure … to merely agree to extend the time to file a forfeiture complaint demonstrated [that he] … was not willing to cooperate" with the government at all. (*Id.* at 118.)

After denying Sellers's motion to dismiss, the Court turned to address the government's request for "a ruling on the admissibility of [Sellers's] statements for rebuttal purposes at trial should [Sellers's] testimony or … arguments … contradict any statements [Sellers] made during the[ ] two proffer sessions." (*Id.* at 121.) Recognizing that Sellers had waived his right to preclude such statements from being used against him, the Court considered whether the waiver was knowing and voluntary. Although Sellers had testified that "he felt intimidated," "did not understand the risks" of the agreement, and "would not have proffered" if he knew Espinosa was not available to testify at his trial, the Court found Sellers's testimony was not credible and concluded that his waiver was, in fact, knowing and voluntary.[4] (*Id.* at 123-24.)

Sellers's case went to trial, and the jury found him guilty on the sole count in the indictment. The District Court sentenced him to 188 months' imprisonment and 5 years' supervised release.

This timely appeal followed.

---

[4] Despite the Court's ruling, the government never had occasion to use Sellers's statements against him when his case went to trial, and the jury therefore never heard them.

## II.    Discussion[5]

Sellers argues that the District Court erred in denying his motion to dismiss the indictment based on his assertion that his indictment was retaliatory, and that the Court should not have permitted the government to use his statements against him, despite his proffer agreement with the government. He also says that a new trial should be ordered because the government knowingly elicited perjured testimony from a government witness. We address those arguments in turn.

### A.    *Vindictive Prosecution*

Claiming that the government indicted him because of his refusal to consent to an extension of time to file a complaint for the forfeiture of his truck, Sellers first argues that the District Court erred by not dismissing the indictment based on vindictive prosecution.

Due process is violated when one is punished vindictively for doing "what the law plainly allows" in "exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). "The Supreme Court has determined that certain prosecutorial conduct raises a presumption of vindictiveness … ." *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998). That presumption generally does not apply, however, to "pre-trial prosecutorial conduct." *Id.*; *see Goodwin*, 457 U.S. at 384 ("The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness

---

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

certainly is not warranted.").  Thus, for "a defendant to prove vindictiveness on the part

of the government for its decision to seek an indictment, he must present objective

evidence showing genuine prosecutorial vindictiveness," *Spears*, 159 F.3d at 1086, that

is, that the prosecutor was actually vindictive, *United States v. Esposito*, 968 F.2d 300,

305 (3d Cir. 1992); *see id.* ("[W]here the government's conduct is attributable to

legitimate reasons, we will not apply a presumption of vindictiveness (though [the]

defendant may still show actual vindictiveness).").

Recognizing that, since he challenges the decision to indict, he cannot benefit from

the presumption of vindictiveness in this case, Sellers argues that the District Court

nevertheless should have dismissed the indictment because "[t]he facts [he] adduced …

most certainly demonstrated … actual vindictiveness." (Appellant's Br. at 14.)  As he

sees it, his case would have ended in a non-trial disposition had he consented to the

government's request for an extension of time to file a forfeiture complaint.  The District

Court found otherwise, explaining that the evidence instead showed that Sellers's refusal

to consent to the extension of time to file a forfeiture complaint was the "last straw"

(Joint App. at 119) among other actions that demonstrated to the government that Sellers

"was not willing to cooperate," as initially hoped (*id.* at 118).

"Our review of the [D]istrict [C]ourt's factual finding [regarding] actual

vindictiveness is for clear error … ." *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir.

2001).  Under that standard of review, we may not reverse the District Court "unless, on

review of the entire evidence, we are left with the definite and firm conviction that a

mistake has been committed." *United States v. Siddons*, 660 F.3d 669, 708 (3d Cir. 2011) (citation and internal quotation marks omitted).

We discern no error, let alone clear error, in the District Court's conclusion that Sellers failed to demonstrate actual vindictiveness. As the District Court appropriately characterized it, the evidence shows that the decision to indict Sellers stemmed from the government's perception that Sellers was unwilling to cooperate. (*See* Joint App. at 30 (Sellers's counsel recalling that "the forfeiture of the truck was one aspect in addition to other aspects that were being discussed in connection with the cooperating plea agreement").) That Sellers was indicted when his lack of cooperation became apparent is not, as Sellers submits, evidence that his indictment must have been retaliatory. *See United States v. Oliver*, 787 F.2d 124, 125-26 (3d Cir. 1986) (holding there was no prosecutorial vindictiveness where the defendant "freely decided not to cooperate … and, as a result, was later indicted"). We thus conclude that the District Court properly denied Sellers's motion to dismiss the indictment.

B.      *The Proffer Statements*

Sellers next argues that the District Court errantly granted the government's motion to use Sellers's proffer session statements against him "to cross-examine [him] and to rebut any evidence or arguments offered on [his] behalf." (Supp. App. at 109.) He claims that his agreement to allow the government to offer such statements at trial was

not knowing and voluntary because he did not know that Espinosa had absconded when he agreed to it.[6]

A criminal defendant's statements during plea discussions are generally inadmissible at trial, *see* Fed. R. Evid. 410(a)(4) (stating that "a statement made during plea discussions with an attorney for the prosecuting authority" that "did not result in a guilty plea" is "not admissible against the defendant who … participated in the plea discussions"), but a defendant's right to not have such statements used against him at trial can be waived, at least for impeachment purposes, "as long as there is no affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily," *United States v. Hardwick*, 544 F.3d 565, 569-70 (3d Cir. 2008) (alteration in original) (internal quotation marks omitted). A waiver is "knowing" so long as it is "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," and it is voluntary so long as it is "the product of a free and deliberate choice rather than intimidation, coercion or deception." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (citation and internal quotation marks omitted). "We have plenary review over [Sellers's] contention that the [D]istrict [C]ourt erred in finding that [his] waiver … was knowing and voluntary." *Riddick v. Edmiston*, 894 F.2d 586, 589 (3d Cir. 1990).

---

[6] Although the statements were never actually used against him at trial, *see supra* note 4, Sellers claims that the Court's ruling prejudiced him by preventing him from offering testimony that was inconsistent with his prior statements to authorities. (*See* Appellant's Opening Br. at 16 ("[T]he Order had an obvious chilling effect on Sellers and his counsel and it effectively tied their hands behind their backs during trial with respect to their trial strategy.").)

Here, even accepting Sellers's account that he was not apprised of the fact that Espinosa had fled the country until after the first proffer session concluded,[7] there is no basis for rejecting the District Court's determination that Sellers's waiver was knowing and voluntary. Sellers's counsel testified before the District Court that he advised Sellers of the risks and rewards attendant to entering into the proffer agreement, that he confirmed that Sellers understood the fact that his statements could be used to rebut claims made at trial based on the waiver, and that Sellers did not appear to have been intimidated or coerced into agreeing to it. That Sellers did not know Espinosa had absconded is of no moment. Although Sellers's waiver may have been better informed if, when he decided to make a proffer to the government, he had known that Espinosa had left the country, "complete knowledge of the relevant circumstances" is not generally necessary to effectuate a valid waiver. *United States v. Ruiz*, 536 U.S. 622, 630 (2002). What he knew was sufficient. Indeed, as Sellers's counsel at the time of the proffer session candidly explained to the District Court, Espinosa's unavailability did not have "a large impact on the strength of the government's case." (Joint App. at 86.) That observation was borne out, as Valencia's testimony and other evidence of Sellers's guilt was enough for a jury to convict him. We conclude, therefore, that the District Court committed no error in finding Sellers's waiver to be knowing and voluntary.

---

[7] Like the District Court, we have serious doubts as to whether Sellers's account is true, given that he continued to work with the government even after having learned that Espinosa had fled to Mexico. (*See* Joint App. at 124 ("The Court finds [Sellers's] testimony to not be credible … [because,] even after the defendant was aware that [Espinosa] was not available to testify, [Sellers] nonetheless made a decision to proffer a second time.").)

9

C.      *Use of Perjured Testimony*

Finally, Sellers claims that he is entitled to a new trial since the government knowingly elicited perjured testimony from Valencia at trial.  Although he did not raise that argument before the District Court, he urges that we should entertain it at this juncture because the use of perjured testimony was a "plain error that" prejudiced him insofar as it "affect[ed his] substantial rights."  Fed. R. Crim. P. 52(b).

 Perjury occurs when a witness "'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory,'" *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)), and gives rise to a due process violation if a defendant can demonstrate, among other things, that a government witness actually committed perjury of which the government knew or should have known, *see Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) ("[I]n order to make out a constitutional violation [the party claiming constitutional error] must show that (1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is [a] reasonable likelihood that the false testimony could have affected the verdict.").

According to Sellers, Valencia perjured himself when he testified on direct examination that he met with Sellers twice in September 2008, and that Sellers gave him $80,000 and three kilograms of cocaine wrapped with tape, during those meetings.[8]

---

[8] Valencia had previously told the government that the meetings took place in June 2008, and that Sellers gave him $50,000 and unwrapped cocaine.

10

Assuming that Valencia's trial testimony could be said to be "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory," *Hoffecker*, 530 F.3d at 183 (citation and internal quotation marks omitted), Sellers still cannot use it as a basis for securing a new trial. Far from being of the prejudicial nature necessary to prevail on plain error review, *see Gov't of V.I. v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005) (noting that, to affect substantial rights for purposes of plain error review, an error "must have been prejudicial: It must have affected the outcome of the district court proceedings" (citation and internal quotation marks omitted)), the inconsistency between Valencia's pretrial statement and testimony benefited Sellers. He fully exploited the discrepancies in Valencia's account during cross-examination and, in so doing, substantially undermined Valencia's credibility to the jury.

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment entered by the District Court.

11