[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14594
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00338-TCB-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRUCE MURRAY,
a.k.a. John Lamons,
a.k.a. Carlos Jones,
a.k.a. Bernard Jones,
a.k.a. Tony Murray,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 30, 2016)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

Bruce Murray appeals his convictions for possession of a firearm by a convicted felon, and for possession with intent to distribute marijuana, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(D), 922(g)(1), and 924(e). Murray also challenges his 240-month total sentence. No reversible error has been shown; we affirm.

I.

We first consider Murray's challenges to the denial of his motions to suppress evidence. In considering the denial of a motion to suppress, we review fact determinations for clear error and application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). We construe all facts in the light most favorable to the prevailing party in district court. Id.

2

A.  19 March 2013 Traffic Stop

Murray first contends that the district court erred in denying his motion to suppress evidence obtained as a result of Murray's seizure during a traffic stop on 19 March 2013.  As an initial matter, Murray does not dispute that the car in which he was a passenger had an expired tag and, thus, that the traffic stop itself was lawful.  As a result, Officer Moncrief was -- "as a matter of course" -- authorized to order Murray out of the car.  See Md. v. Wilson, 117 S. Ct. 882, 884, 886 (1997).

Officer Moncrief was also entitled to conduct a pat-down search for weapons based on Murray's failure to comply immediately with Officer Moncrief's orders to exit the car, on Murray's furtive movement toward the console of the car, and on Murray's statement to officers that he in fact had a gun. See Terry v. Ohio, 88 S. Ct. 1868, 1883 (1968).

In the light of Officer Moncrief's prior knowledge of Murray's criminal history[1] and the discovery of a gun during a pat-down search, probable cause existed to arrest Murray for being a felon in possession of a gun.  Probable cause also existed to arrest Murray for possession of marijuana.  Officer Moncrief

---

[1] In denying Murray's motion to suppress, the district court credited Officer Moncrief's testimony that, at the time of the traffic stop, he knew Murray was a convicted felon.  Because this credibility determination is not "contrary to the laws of nature" or "so inconsistent or improbable on its face," we accept the district court's factual finding.  See United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004).

3

smelled marijuana[2] and believed that the baggie sticking out of Murray's front pocket -- which was in plain view -- was the kind of bag used commonly to package marijuana; probable cause existed to believe that the baggie contained contraband.  Seizure of the baggie was lawful under the plain view doctrine.  See United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

No Fourth Amendment violation has been shown; the district court denied properly Murray's motion to suppress evidence seized as a result of the 19 March traffic stop.

B.  27 March 2013 Search Warrant

We also reject Murray's challenge to the validity of the search warrant for his house.  When issuing a search warrant, the magistrate judge must "make a practical, common-sense decision about whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983).  In reviewing the issuance of a warrant, we consider whether "the magistrate had a substantial basis for concluding that probable cause existed."  Id. (quotations and alterations omitted).

---

[2] We accept the district court's decision to credit Officer Moncrief's testimony that he smelled marijuana.  See Pineiro, 389 F.3d at 1366.

4

Here, the affidavit supporting the search warrant contained sufficient information from which the magistrate judge could conclude reasonably that probable cause existed to search Murray's home.  The affidavit contained details about a March 2013 investigation of the house, including (1) that several visitors entered and exited the house after only a few minutes, which the attesting officer believed was indicative of drug sales; and (2) that a traffic stop of a car leaving the house resulted in the seizure of three baggies of marijuana, a gun, and over $500 in small bills.  This information was sufficient to establish a fair probability that contraband would be found at the house.  See United States v. Sweeting, 933 F.2d 962, 964-65 (11th Cir. 1991) (affidavit established probable cause to search house where informants' tip about drug activities was confirmed by officer's observation of a pattern of short and frequent visits, and by the seizure of drugs from a car leaving the house).  That the affidavit also contained details from a 2012 investigation of drug activity at the house did not render the affidavit constitutionally invalid.  The district court committed no error in denying the motion to suppress evidence seized on 27 March.

C.  27 March 2013 Detention

Murray next contends that he was detained unlawfully during the execution of the search warrant on 27 March, because he was not physically on property covered by the search warrant.

When executing a search warrant, officers have a categorical power to detain occupants who are within the "immediate vicinity of the premises to be searched." Bailey v. United States, 133 S. Ct. 1031, 1038, 1042 (2013).  In determining whether an occupant's detention was lawful, we consider "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors."  Id.

When the search warrant was executed, Murray was standing on the driveway of a property adjacent to his house.  While Murray was beyond "the lawful limits of the premises" to be searched, the district court committed no error in determining that Murray was both within sight of his house and could have easily re-entered the house from his location.  Because Murray was, thus, within the immediate vicinity of the premises to be searched, his detention was lawful. See id.

D.  27 March 2013 Statements

A criminal suspect has a Fifth and Fourteenth Amendment right to have a lawyer present during custodial interrogation.  Edwards v. Arizona, 101 S. Ct. 1880, 1883 (1981).  Once a suspect invokes his right to counsel, custodial interrogation must cease until a lawyer is present or until the suspect reinitiates contact with the police.  Id. at 1884-85.

The parties do not dispute that Murray invoked his right to counsel when he first spoke with Officer McLeod during a custodial interrogation and that Murray also later requested to speak with Officer McLeod.  At the suppression hearing, the parties presented conflicting testimony about what happened between Murray's first and second conversation with Officer McLeod.  Crediting the officers' testimony, the magistrate judge found that no officer promised Murray that, in exchange for a confession, his girlfriend and 17-year-old son would be released. Because this credibility determination is neither inconsistent with the facts nor improbable on its face, we accept the magistrate judge's finding that no such promise was made.  See Pineiro, 389 F.3d at 1366.

Furthermore, to the extent Murray was motivated to waive his Miranda rights by a desire to protect his girlfriend and son, such motivation did not render his waiver involuntary.  The Fifth Amendment is not implicated by "moral and

psychological pressures to confess emanating from sources other than official

coercion." Or. v. Elstad, 105 S. Ct. 1285, 1290 (1985).  And an officer's statement

that a suspect's friend or family member will be arrested unless he confesses is not

coercive so long as -- when the officer spoke -- the officer had probable cause to

effect the threatened arrest.  Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir.

2001).  Here, probable cause existed to arrest Murray's girlfriend and son based on

their presence in the house where drugs and a gun had already been found.  See

United States v. Harris, 20 F.3d 445, 454 (11th Cir. 1994) (concluding that a

defendant's unrestricted access to a home in which drugs were found permitted the

jury to infer that defendant maintained constructive possession of the drugs).

On this record, nothing evidences that Murray's statements to Officer

McLeod were coerced or that Murray waived unknowingly or involuntarily his

right to counsel.  The district court committed no error in denying Murray's motion

to suppress.

II.

Murray next challenges the district court's denial of his motion to dismiss --

on grounds of vindictive prosecution -- Count Five.  Murray contends that, after

Murray moved successfully to dismiss the case for violations of the Speedy Trial

Act, the prosecutor re-indicted Murray (adding Count Five) in violation of Murray's due process rights.

We review de novo whether the prosecutorial vindictiveness doctrine applies. United States v. Barner, 441 F.3d 1310, 1315 (11th Cir. 2006).

Because Count Five was added pretrial, no presumption of vindictiveness arose. See id. at 1316 ("While a prosecutor's decision to seek heightened charges after a successful *post-trial* appeal is enough to invoke a presumption of vindictiveness, 'proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the *pretrial* context.'"). And nothing evidences that the prosecutor acted with actual vindictiveness in charging Murray with an additional count. To the contrary, the government agreed with Murray that his rights to a speedy trial had been violated and, thus, that dismissal without prejudice of his initial case was appropriate. The government then proffered a legitimate reason for its decision to add Count Five: to eliminate, for purposes of sentencing, the need to show that the drugs were inextricably intertwined with another count. The record supports the district court's conclusion that the new charge was not added vindictively.

III.

We reject Murray's argument that the district court denied him his right to testify.  Because Murray raised no objection in the district court, we review this issue only for plain error.  See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

"[I]t is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected." United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998).  "[A] trial court has no sua sponte duty to explain to a criminal defendant that he has a right to testify or to conduct an on-the-record inquiry into whether a defendant that is not testifying has waived the right knowingly, voluntarily, and intelligently." Id.

In pertinent part, after Murray told the district court that he intended to testify, Murray asked the trial judge whether his prior felony convictions would come into evidence.  The district court explained that, if Murray testified, he would be subject to cross-examination about the details of his prior convictions.  The district court did not, however, explain that the government's ability to ask about Murray's prior convictions would be limited by Fed. R. Evid. 609.  The court then reiterated that Murray had an absolute right to testify and that the decision whether

10

to testify was entirely up to Murray.  Murray said he understood and that he had decided not to testify.

Although the district court may have failed to explain fully the circumstances under which Murray's prior convictions could be introduced, the district court committed no plain error.  First, the details of at least some of Murray's prior convictions would have been admissible under Rule 609.  Murray also had ample opportunity to discuss with his lawyer his decision to testify.  Nothing evidences that the district court's comments unduly influenced Murray's decision not to testify or impaired Murray's ability to waive knowingly his right to testify.[3]  We see no reversible error.

## IV.

We reject Murray's challenges to his below-guidelines sentence.[4]  First, the district court applied properly an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), because Murray had three qualifying

---

[3] Murray's reliance on our decision in United States v. Hung Thien Ly, 646 F.3d 1307 (11th Cir. 2011), is misplaced.  Unlike the defendant in Hung Thien Ly, Murray was not acting pro se and displayed no obvious misunderstanding about his right to testify.

[4] Murray's appellate brief contains no plain and prominent argument about the substantive reasonableness of his sentence; that issue is abandoned.  See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

11

predicate offenses, including two serious drug crimes and a conviction for terroristic threats.

The district court also applied properly a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and a one-level enhancement under section 4B1.4 based on Murray's possession of a gun in connection with a felony offense.  Murray was convicted of possession with intent to distribute marijuana; when he was arrested, he had both marijuana and a gun on his person.  An enhancement under section 2K2.1(b)(6)(B) is proper "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs."  U.S.S.G. § 2K2.1, comment. (n.14(B)(ii)); see also United States v. Carillo-Ayala, 713 F.3d 82, 92 (11th Cir. 2013) (explaining that a gun found in close proximity to drugs "simply '*has*' -- without any requirement for additional evidence -- the potential to facility the drug offense." (emphasis in original)).  Moreover, contrary to Murray's argument, "[a] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."  United States v. Watts, 117 S. Ct. 633, 638 (1997).

AFFIRMED.