NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0541n.06

No. 24-4019

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| JASON EUGENE MINCY, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

FILED
Nov 24, 2025
KELLY L. STEPHENS, Clerk

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, J., delivered the opinion of the court in which READLER and MURPHY, JJ., concurred. READLER, J. (pp. 8–15), delivered a separate concurring opinion.

BLOOMEKATZ, Circuit Judge. After Jason Eugene Mincy moved to suppress evidence that he intended to distribute methamphetamine, the government filed a superseding indictment that significantly raised his sentencing exposure. Mincy moved to dismiss the superseding indictment for vindictive prosecution, but the district court denied both his motion to dismiss and his motion to suppress. Mincy pleaded guilty and the district court sentenced him to thirteen years in prison.

Mincy pursues two claims on appeal. *First*, he contends that the district court abused its discretion by denying his motion to dismiss the superseding indictment. *Second*, he argues that his trial counsel was constitutionally ineffective. We hold that the district court did not abuse its discretion in denying Mincy's motion to dismiss the superseding indictment. And we decline to address Mincy's ineffective assistance of counsel claim on direct appeal. Accordingly, we affirm.

**BACKGROUND**

In February 2020, law enforcement officer Brandon Mossberger was patrolling the Republic Street area in Cincinnati's Over-the-Rhine neighborhood when he recognized Jason Eugene Mincy. Because Officer Mossberger knew that Mincy had outstanding warrants, he initiated an arrest. Mincy fled on foot, so Officer Mossberger took off in pursuit and called for backup. He ended the short chase by tasing Mincy. Officer Mossberger would later testify that he had seen Mincy engage in a hand-to-hand drug transaction just before the arrest.

In a search incident to arrest of Mincy's person, officers recovered a bag of suspected methamphetamine, a loaded firearm, and $167 in cash (including 47 one-dollar bills). Once Mincy was handcuffed and surrounded by law enforcement, one officer removed a drawstring bag from Mincy's shoulders and quickly searched it while standing next to him. Another officer then carried the bag away from Mincy and searched it more extensively. Among other items, this second search turned up a box of plastic sandwich bags. The officers took Mincy to the Hamilton County Jail. Testing from the Hamilton County Crime Laboratory later confirmed that the bag of suspected drugs recovered from Mincy's person contained 17 grams of a mixture containing methamphetamine. This federal prosecution followed.

The procedural record is integral to Mincy's arguments on appeal, so we recount it closely. The government initially indicted Mincy for possession of a "detectable amount" of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C). While engaged in plea negotiations, Mincy moved to suppress the plastic sandwich bags. He argued that the search of his drawstring bag was not a lawful search incident to arrest. At Mincy's requests, the hearing on his motion was continued several times so that he could further consider a plea. During that period, the government received an additional laboratory report

indicating that the drug mixture recovered from Mincy's person contained approximately 12 grams of pure methamphetamine.

Plea negotiations eventually broke down, and the government filed a superseding indictment that alleged a methamphetamine quantity of five grams or more, in violation of 21 U.S.C. § 841(b)(1)(B). The government also filed notice that it would pursue a statutory sentence enhancement based on a prior conviction for a serious drug felony. These filings changed the dynamic of the case. While Mincy previously faced zero to twenty years on the drug charge, the superseding indictment (along with the sentence enhancement) increased that to a mandatory minimum of ten years with a maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(B), 841(b)(1)(C).

Mincy moved the district court to dismiss the superseding indictment. He argued that the government superseded to vindictively punish him for filing his motion to suppress, and in doing so, violated the Due Process Clause. The government responded that it superseded because of the results of the methamphetamine purity testing and the breakdown in plea negotiations.

The district court scheduled an omnibus hearing on the motion to dismiss and the motion to suppress. At the hearing, Mincy cross-examined Officer Mossberger's account of the arrest and ensuing searches, and presented expert testimony on the relevance of the plastic sandwich bags to the methamphetamine charge. Notably, Mincy introduced no direct evidence of prosecutorial vindictiveness during the plea negotiations. After evaluating the parties' post-hearing briefs, the district court denied both motions. Ultimately, Mincy pleaded guilty, and the district court sentenced him to thirteen years of imprisonment.

Mincy timely appealed. Although the district court noted that Mincy's motion to suppress presented a "close case" and "barely" denied suppression, D. Ct. Op., R.56, PageID 370, Mincy

does not ask us to review that ruling. He instead renews his vindictive prosecution claim and further argues that his trial counsel was constitutionally ineffective.

## ANALYSIS

### I.      Mincy's Motion to Dismiss the Superseding Indictment

We review the district court's decision to deny Mincy's motion to dismiss the superseding indictment on prosecutorial vindictiveness grounds for abuse of discretion. *United States v. Zakhari*, 85 F.4th 367, 378–79 (6th Cir. 2023). We defer to the district court's factual findings unless clearly erroneous but review the district court's legal conclusions de novo. *United States v. LaDeau*, 734 F.3d 561, 565–66 (6th Cir. 2013).

A prosecutor's broad discretion in charging decisions is not unlimited. The Due Process Clause prevents the government from punishing an individual for exercising a constitutional or statutory right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). This protection extends to pre-trial motions, including motions to suppress evidence. *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc); *LaDeau*, 734 F.3d at 567–68. A defendant may establish vindictive prosecution either by showing actual vindictiveness or by relying on a presumption of vindictiveness. *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005).

Since Mincy did not develop an actual vindictiveness claim, we consider only whether Mincy can rely on a presumption of vindictiveness. To succeed, he must show (1) the government had a sufficient "stake" in punishing or deterring his motion to suppress and (2) the government's decision to pursue new charges "was somehow unreasonable." *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021) (citation omitted). Requiring Mincy to show a sufficient government stake ensures that the presumption is only triggered by pre-trial motions important enough to "reasonably indicate retaliation." *LaDeau*, 734 F.3d at 566; *see also Goodwin*, 457 U.S. at 381.

Routine or "garden-variety" pre-trial motions do not suffice. *United States v. Rosse*, 716 F. App'x 453, 462 (6th Cir. 2017). If Mincy establishes that the government had a sufficient stake in the motion and acted unreasonably, the burden shifts to the government to rebut the presumption with "objective, on-the-record explanations" for the charging decision. *LaDeau*, 734 F.3d at 566 (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)).

We agree with the district court that Mincy has failed to show a sufficient government stake in punishing or deterring his motion to suppress. As such, the district court did not abuse its discretion by denying his motion to dismiss the superseding indictment.

To determine whether the government had a sufficient stake in a motion to suppress, we examine how important the evidence at issue was to the government's ability to secure a conviction. We have previously held that there was a sufficient stake when suppression "inflicted a mortal blow," *LaDeau*, 734 F.3d at 569, or "presented a grave threat," *Zakhari*, 85 F.4th at 382, to the government's case. In *LaDeau*, for example, the government indicted the defendant for possession of child pornography—but after suppression "there was no longer any admissible evidence" of such possession. 734 F.3d at 564. Or take *Zakhari*, where the evidence to be suppressed was an "especially compelling" videotaped confession. 85 F.4th at 382. To be sure, the government may have a sufficient stake in a motion to suppress even if it does not target indispensable evidence. *See id.* at 382–83. But the motion must at least threaten to make the government's job at trial "much tougher" in order to trigger a presumption of vindictiveness. *Id.* at 382.

Considering the totality of the government's evidence here, Mincy cannot make that showing. Even if Mincy had successfully suppressed the sandwich bags, the government would have had a strong case that he possessed five grams or more of methamphetamine with intent to

distribute. The government's case could have rested comfortably on the evidence found on Mincy's person: the bag of methamphetamine, the loaded gun, and $167 largely in small bills. Mincy's own expert agreed that the firearm and the denominations of the cash could serve as inferential evidence of distribution. And beyond the physical evidence, the government had Officer Mossberger's sworn testimony that he saw Mincy engage in a "hand-to-hand drug transaction" in a "high drug-trafficking area." Tr. of Omnibus Hr'g, R.50, PageID 176–78, 200–01. So in short, the sandwich bags were only one minor component of the government's significant evidence on Mincy's drug charge.

Mincy's argument at the omnibus motions hearing does not convince us otherwise. Mincy argued that the government needed the sandwich bags to prove that he intended to distribute the methamphetamine. We disagree. As we have explained, the government could have comfortably proven intent to distribute based on the other evidence in the case. Therefore, Mincy's motion to suppress did not threaten to make the government's job at trial "much tougher." *Zakhari*, 85 F.4th at 382.

Because Mincy's motion to suppress would have only eliminated ancillary evidence, he has not shown a sufficient government stake in punishing or deterring the motion as defined in our cases. We thus affirm the district court's denial of Mincy's vindictive prosecution claim.

## II. Mincy's Ineffective Assistance Claim

Mincy further claims that he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). He appears to argue that the constitutional deficiency stems from his counsel's performance during plea negotiations and decision to litigate the motion to suppress despite an alleged threat of a superseding indictment.

We conclude that the record is not sufficiently developed to consider Mincy's claim on direct appeal. We generally decline to address ineffective assistance claims on direct appeal "unless trial counsel's ineffectiveness is apparent from the record." *United States v. Burrell*, 114 F.4th 537, 548 (6th Cir. 2024) (citation omitted). That narrow exception does not apply here. Mincy must show that (1) his counsel performed deficiently and (2) he was prejudiced as a result. *Strickland*, 466 U.S. at 687. But Mincy's claim is inseparably intertwined with his plea negotiations, and we have no evidence about the negotiations that would allow us to evaluate either *Strickland* prong. The district court is the forum "best suited" to develop that necessary factual record. *Massaro v. United States*, 538 U.S. 500, 505 (2003). We accordingly dismiss Mincy's ineffective assistance of counsel claim. Mincy may raise this claim in a timely filed motion under 28 U.S.C. § 2255.

## CONCLUSION

We affirm the district court's denial of Mincy's motion to dismiss the superseding indictment and hold that Mincy's ineffective assistance of counsel claim may not proceed on direct appeal.

READLER, Circuit Judge, concurring.  Jason Mincy lacks sufficient evidence to allow us to presume the prosecutor in his case brought new charges in retaliation for litigating a "routine" motion to suppress.  *See United States v. LaDeau*, 734 F.3d 561, 568 (6th Cir. 2013) (citation modified).  Because that factual deficiency is enough to resolve this case, I join the Court's opinion in full.  Yet the government's position here raises a broader question:  Can a prosecutor's charging decisions ever trigger the presumption of vindictiveness in the pretrial context?  I do not think so.

Our nation's legal system places significant trust and responsibility in the hands of its local, state, and federal prosecutors.  In exchange, we expect prosecutors to act impartially in pursuing justice.  Robert H. Jackson, The Federal Prosecutor, Address Delivered at the Second Annual Conference of United States Attorneys (Apr. 1, 1940) ("While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst.").  While most prosecutors easily meet that mark, every profession has its outliers, with some prosecutors on occasion having acted in a way that suggests their motivation was more vindictive than judicious.  *See, e.g.*, *Thigpen v. Roberts*, 468 U.S. 27, 30–31 (1984) (affirming vacated conviction where the prosecutor added a felony manslaughter charge in response to defendant's appeal of misdemeanor, creating realistic likelihood of vindictiveness); *State v. Phipps*, 959 S.W.2d 538, 539 (Tenn. 1997) (Presumption of vindictiveness arose where, after the defendant successfully appealed his murder conviction, the prosecutor—who had not sought the death penalty at the first trial—sought the death penalty on remand.); *State ex rel. Patterson v. Randall*, 637 S.W.2d 16, 19 (Mo. 1982) (same).

The Supreme Court has described such retaliatory conduct as "vindictiveness."  *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969).  While one can fairly question the origins of the doctrine, *see, e.g.*, *Medina v. California*, 505 U.S. 437, 445–46 (1992) (holding that due process

in the criminal context covers only those processes rooted in history), as understood today, it rests on the Due Process Clause, which the Supreme Court has long understood to guarantee the fair and evenhanded administration of criminal law. *See, e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886). To safeguard those principles, the Supreme Court in *Blackledge v. Perry*, 417 U.S. 21 (1974) adopted a prophylactic rule: A prosecutor's actions can raise a presumption of vindictiveness, thereby risking dismissal of the indictment, where those acts reflect a "realistic likelihood of vindictiveness." 417 U.S. at 27. That presumption permits courts to infer retaliation even without direct evidence of such conduct, where the circumstances make a retaliatory motive plausible. *Id.* at 27–28; *see also LaDeau*, 734 F.3d at 566. Once the presumption arises, the burden shifts to the government to show an alternative, nonretaliatory explanation for its actions, like newly discovered evidence. *LaDeau*, 734 F.3d at 566. Applying that rule, the Supreme Court held in *Blackledge* that a prosecutor's filing of a felony charge was presumptively vindictive when it was done in response to a defendant invoking his state law right to a new trial on a misdemeanor. *Blackledge*, 417 U.S. at 28–29. Likewise, in *United States v. Eddy*, 737 F.2d 564 (6th Cir. 1984), we applied the presumption where prosecutors indicted the defendant for perjury only after he had been acquitted in the underlying case. 737 F.2d at 571–72.

These examples share a common thread: The purportedly vindictive charging decision arose following the defendant's trial. At that point, any new charge or penalty likely served no purpose but to punish the defendant. *See United States v. Goodwin*, 457 U.S. 368, 373, 376 (1982). On that basis, it was fair to presume that the act in question was malicious.

While the *Blackledge* rule may sensibly apply in those settings, that same logic does not extend to the pretrial stage, where the circumstances of the parties' engagement are entirely different. At that point, as the parties prepare for a possible trial, much of their efforts typically

are dedicated to the "plea-bargaining" process, a long-standing back-and-forth practice that lends "stability and certainty to the criminal justice system." *Lee v. United States*, 582 U.S. 357, 379–80 (2017) (citation modified) (Thomas, dissenting) (noting the "special solicitude [of] the plea process"); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 361 (1978). Indeed, it is difficult to overstate the significance of plea negotiations in the criminal justice setting. Plea bargaining largely defines the pretrial stage, with roughly 97% of federal felony or Class A misdemeanor convictions resulting from guilty pleas. United States Sentencing Commission, *Federal Sentencing: The Basics* (Sep. 2020), https://perma.cc/MT6M-S2VE; *see also* Stephanos Bibas, *Taming Negotiated Justice*, 122 Yale L.J. Online 35, 35 (2012) (observing that "nineteen out of every twenty adjudicated criminal cases ends in a guilty plea" and arguing that plea bargaining has become "central" to modern criminal procedure); George Fisher, *Plea Bargaining's Triumph*, 109 Yale L.J. 857, 859–60 (2000) (describing the "triumph" of plea bargaining, noting it has "swept across the penal landscape"). Pretrial proceedings, in other words, are marked largely by negotiations between the prosecutor and the accused. Even those actions that are aimed more at preparing a case for trial, for example, fulfilling *Brady* and *Giglio* disclosure obligations or interviewing witnesses, also help shape the trajectory of plea negotiations. The Prosecutors: Legal Briefs, *Episode 103: Plea Agreements*, at 11:45–12:35 (Sep. 1, 2023), https://perma.cc/9SHX-NLSE (observing that pretrial evidentiary developments routinely inform the parties' relative leverage and thus shape plea-bargaining dynamics).

As that discussion unfolds, both sides hold some leverage, yet both sides face some risk. Within the plea-bargaining framework, the prosecutor enjoys charging discretion, that is, the right to decide which charges to level against the defendant, and when to bring them. *See Bordenkircher*, 434 U.S. at 364 ("[S]o long as the prosecutor has probable cause to believe that

the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Along the way, a prosecutor must also weigh the costs and risk of a trial and possible acquittal when deciding whether to accept a defendant's plea offer. *See* The Prosecutors: Legal Briefs, *supra*, at 12:35–19:20 (discussing a prosecutor's risks and costs in going to trial).

The defendant, meanwhile, maintains a host of rights, including the right to file pretrial motions, and, ultimately, the right to take the case to trial, where the prosecutor must prove any charge beyond a reasonable doubt. *Bordenkircher*, 434 U.S. at 364–65; *see also In re Winship*, 397 U.S. 358, 364 (1970); Stephanos Bibas, *Pleas' Progress*, 102 Mich. L. Rev. 1024, 1038 (2004) (recognizing that the proliferation of criminal procedural rights expanded the dimensions over which parties could bargain). At the same time, a defendant faces the likelihood of a stiffer punishment should he be unsuccessful at trial. *See, e.g.*, U.S. Sent'g Guidelines Manual § 3E1.1(a) (U.S. Sent'g Comm'n 2023) ("If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."); *United States v. Merritt*, 102 F.4th 375, 383 n.7 (6th Cir. 2024) (recognizing that defendants "benefit from pleading guilty rather than going to trial by receiving the certainty of a plea agreement and assurances that the government will drop or reduce certain charges"). So both sides have something to gain from a plea bargain, while enjoying leverage to help secure a favorable result.

Consider the role of the prosecutor in particular. A prosecutor, it bears repeating, has broad discretion to decide what charges to bring. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979). And, save for deadlines imposed by statutes of limitations and the like, the prosecutor similarly is afforded flexibility on when to bring charges. *See United States v. Obi*, 85 F. App'x 440, 444 (6th Cir. 2003) (emphasizing that a prosecutor may seek a superseding indictment at any

point before trial); 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(c) (4th ed. 2015). So during the plea-bargaining process, a prosecutor may fairly reconsider those decisions and what compromises she believes to be appropriate. *See* LaFave, *supra* § 21.3(c). And she may well decide that changes are necessary, either as part of a routine reassessment of the case based upon information learned or, relatedly, a reflection on the ordinary give-and-take of the adversarial process. *See Goodwin*, 457 U.S. at 381 (explaining that at the pretrial stage, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized"); *United States v. Napue*, 834 F.2d 1311, 1330 (7th Cir. 1987) (A prosecutor "needs broad discretion in the timing of the indictment and its contents, both of which depend on changing factors such as when information becomes available to the prosecutor, how the prosecutor views the evidence, and how and when the prosecutor's theory of the case evolves.").

But characterizing the use of that authority as improper retaliation against the defendant, perhaps even giving rise to a claim supporting a presumption of vindictiveness, *see Blackledge*, 417 U.S. at 27, would handcuff a prosecutor in this otherwise tried-and-true process. It also misses the point. Again, prosecutors enjoy the flexibility to bring or drop charges as they assess and reassess a case, knowing that any charge must ultimately be proven beyond a reasonable doubt. There is no basis for limiting that historic discretion by measuring it under the *Blackledge* presumption-of-vindictiveness framework simply because that discretion might be used to maximize the prosecutor's position in plea discussions.

This understanding accords with our recent decision in *United States v. O'Lear*, 90 F.4th 519, 532 (6th Cir. 2024). There, we held that a prosecutor's decision to add charges after a defendant declined a plea deal was not a vindictive act on the prosecutor's part. In so doing, we agreed with the many courts that have similarly "refused to extend this reading to plea bargaining."

*O'Lear*, 90 F.4th at 531–32; *see, e.g.*, *United States v. Curry*, 744 F. App'x 784, 786 (4th Cir. 2018); *United States v. Austin*, 902 F.2d 743, 745 (9th Cir. 1990); *United States v. South*, 295 F. App'x 959, 968 (11th Cir. 2008). That is for good reason. A plea negotiation necessarily turns on the prosecutor's charging authority—the ability to propose concessions in exchange for a guilty plea and, conversely, to pursue the charges supported by the evidence should negotiations fail. If the mere act of adding or restoring charges after a defendant declines a plea were treated as presumptively vindictive, that routine exercise of charging discretion would instantly become constitutionally suspect. That result, *O'Lear* observed, would read plea bargaining out of existence, as the prosecutor's charging decisions are the key tools by which that bargaining operates. 90 F.4th at 532.

Put another way, the due process notions that underlie the presumption-of-vindictiveness framework do not reach the plea setting. A prosecutor may fairly induce a plea by threatening additional charges so long as the defendant remains free to reject the offer. *Bordenkircher*, 434 U.S. at 364–65. Equally true, a defendant may waive "any right, even a constitutional right" like due process, especially when doing so allows the defendant to attain a more favorable plea arrangement and likely sentence. *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). As for the worry that a prosecutor might trump up an indictment with longshot charges to prejudice the defendant, such a weak charge, defendants understand, would likely not pass muster with a jury. And in the truly exceptional case of suspect behavior on the part of the prosecutor, other doctrines provide relief. *See, e.g.*, *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (selective prosecution); *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989)

(actual vindictiveness); *United States v. Wright*, 43 F.3d 491, 497–99 (10th Cir. 1994) (knowing and voluntary plea).

Because the presumption of vindictiveness does not apply in the plea-bargaining context, it likewise does not extend to the broader pretrial phase. Even when the parties are not actively negotiating, plea bargaining remains the practical backdrop of any pretrial criminal case: Prosecutors continue to evaluate the developing record, weigh the risk of litigation, allocate limited resources, and decide which charges the evidence will best support at trial. This pretrial posture, where the prosecutor's theory has not yet "crystallized," is not one in which an increased charge reasonably suggests retaliation, warranting the presumption of vindictiveness. *Goodwin*, 457 U.S. at 380–81. In that setting, a change to the indictment is far more likely to reflect routine case assessment than punitive motive.

Given that reality, it makes little sense to differentiate between charging decisions made after a rejected plea offer and those made after other pretrial developments, such as a suppression ruling. Both arise from the same evaluative environment, where plea bargaining, discovery, and trial preparation overlap. This is how prosecutions ordinarily proceed, making it odd to presume irregularity rather than "regularity" in this context. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (prosecutors enjoy a "presumption of regularity [in] their prosecutorial decisions" (citation modified)).

It is no surprise, then, that nearly every other circuit refuses to apply a presumption of vindictiveness in the pretrial context. *See, e.g.*, *United States v. Jenkins*, 537 F.3d 1, 3–4 (1st Cir. 2008) (prosecutor filing an additional charge after the defendant rejects a plea offer); *United States v. Stewart*, 590 F.3d 93, 122–23 (2d Cir. 2009) (prosecutors obtaining a superseding indictment adding charges after failed plea negotiations); *United States v. Sellers*, 501 F. App'x 194, 197 (3d

Cir. 2012) (prosecutor seeking a superseding indictment increasing drug quantities and penalties after the defendant declined to plead guilty); *United States v. Doty*, 832 F. App'x 174, 180 (4th Cir. 2020) (prosecutor adding charges after the defendant succeeded on motions to dismiss); *United States v. Saltzman*, 537 F.3d 353, 361 (5th Cir. 2008) (prosecutor filing a superseding indictment with three additional charges after the defendant withdrew his guilty plea); *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (prosecutors adding a charge after plea discussions stalled); *United States v. Kent,* 649 F.3d 906, 913 (9th Cir. 2011) (prosecutor adding charges after the defendant refused to enter a plea agreement); *United States v. Ray*, 899 F.3d 852, 860 (10th Cir. 2018) (prosecutor filing a new indictment with additional charges during plea negotiations); *United States v. Murray*, 659 F. App'x 1023, 1028 (11th Cir. 2016) (prosecutor reindicting the defendant after a pretrial Speedy Trial Act dismissal); *but see LaDeau*, 734 F.3d at 568 (extending a presumption of vindictiveness to a reindictment following a suppression motion); *United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023) (same).

Each of these circuits has recognized—correctly, in my mind—that before trial, charging decisions are provisional and part of an evolving negotiation. To ensure the continuity of that tested process, prosecutors should not be forced to wonder whether any of those provisional acts could subject the indictment to dismissal.

*　　*　　*　　*　　*

At day's end, it makes no difference to Mincy's case whether we rest on this doctrinal ground or the factual one the Court identifies. Future panels, however, may wish to make explicit that the pretrial context—including when the prosecution conditions a plea on the withdrawal of a suppression motion—is no place to employ a presumption of vindictive prosecution.